PATRICK GILBERT SULLIVAN *vs.* COMMITTEE ON RULES OF
THE HOUSE OF REPRESENTATIVES.

Suffolk.    February 2, 1954. — February 25, 1954.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*General Court.    Commonwealth,* Officers and employees.

A veteran employed for more than three years in the position of director
of fiscal affairs for the committee on ways and means of the House of
Representatives was not entitled to the benefits of G. L. (Ter. Ed.)
c. 30, § 9A, as appearing in St. 1947, c. 242, although his position was
not expressly excluded from the application of § 9A by the terms thereof
and was not classified under the civil service law, G. L. (Ter. Ed.) c. 31.

PETITION for a writ of mandamus, filed in the Superior Court on July 7, 1953.

The case was heard by *Kirk,* J.

*Edward O. Proctor,* (*Patrick G. Sullivan* with him,) for the petitioner.

*Harris A. Reynolds,* Assistant Attorney General, for the respondents.

WILKINS, J.    The petitioner was employed as director of fiscal affairs for the committee on ways and means of the House of Representatives from January 13, 1949, to January 7, 1953, when the position was terminated by vote of the respondent committee on rules. This petition for a writ of mandamus to order restoration to his position is reported without decision upon the pleadings and an agreement as to all the facts. G. L. (Ter. Ed.) c. 213, § 1B, inserted by St. 1939, c. 257, § 1.  G. L. (Ter. Ed.) c. 231, § 111.  The

petitioner, a veteran, contends that, having served as director "for not less than three years," he is entitled to the benefits of tenure of office and protection of the civil service laws under G. L. (Ter. Ed.) c. 30, § 9A, as appearing in St. 1947, c. 242.[1]

Each January from 1949 to 1953, inclusive, the House of Representatives by order authorized the committee on ways and means, with the approval of the committee on rules, "to employ assistance and stenographic services . . . in connection with hearings and preparation of data on various matters referred to said committee." In each of those years the Legislature passed an act making appropriations. From 1949 to 1952, inclusive, one appropriation was for "Service of the Legislature . . . For clerical and other assistance to the house committee on ways and means, including not more than five permanent positions," in an amount adequate to cover salaries of the petitioner and four other employees of that committee. The committee on rules approved the appointment of the petitioner as director on the following dates for the periods indicated: January 13, 1949, from January 1, 1949, to June 30, 1949; July 1, 1949, until June 30, 1950; June 5, 1950, until June 30, 1951; June 1, 1951, until June 30, 1952; June 25, 1952, until June 30, 1953. In each instance except the first there was a provision that the petitioner's "employment [was] to continue during the pleasure of the House committee on rules."

On January 7, 1953, the Speaker of the House, as chair-

---

[1] "A veteran, as defined in section twenty-one of chapter thirty-one, who holds an office or position in the service of the commonwealth not classified under said chapter thirty-one, other than an elective office, an appointive office for a fixed term or an office or position under section seven of this chapter, and has held such office or position for not less than three years, shall not be involuntarily separated from such office or position except subject to and in accordance with the provisions of sections forty-three and forty-five of said chapter thirty-one to the same extent as if said office or position were classified under said chapter. If the separation in the case of such unclassified offices or positions results from lack of work or lack of money, such a veteran shall not be separated from his office or position while similar offices or positions in the same group or grade, as defined in section forty-five of this chapter, exist unless all such offices or positions are held by such veterans, in which case such separation shall occur in the inverse order of their respective original appointments."

man, by letter notified the comptroller of the Commonwealth that the committee on rules had voted not to continue the petitioner's employment as director of fiscal affairs with the committee on ways and means. On January 14 the Speaker wrote the petitioner enclosing a copy of that letter, and expressed regret that "it is necessary to abolish your position." The petitioner at once made written request for a hearing before the committee on rules, citing c. 30, § 9A, and G. L. (Ter. Ed.) c. 31, § 43. On January 22, 1953, the committee on rules considered and denied the request.

In 1953 the committee on ways and means continued, as before, to employ a budget director, a secretary and counsel, neither of whom was a veteran, and two female stenographers. None of these positions is classified under G. L. (Ter. Ed.) c. 31.

The parties have agreed that the post of director of fiscal affairs was not an office or position classified under G. L. (Ter. Ed.) c. 31, was not an elective office, nor that of a "confidential secretary" under G. L. (Ter. Ed.) c. 30, § 7, as appearing in St. 1937, c. 414, § 1, as amended by St. 1941, c. 512, and St. 1947, c. 376; and that there are "no statutes or rules of the Legislature prescribing the length of terms or describing the duties of such employment."

We do not think that the position of director of fiscal affairs for the committee on ways and means of the House of Representatives is "an office or position in the service of the commonwealth not classified under said chapter thirty-one" within the meaning of G. L. (Ter. Ed.) c. 30, § 9A, as appearing in St. 1947, c. 242. We are unable to discover that the Legislature here has manifested the most unlikely intention that one General Court, or one branch thereof, shall commit a succeeding General Court, or one branch thereof, by employing an individual for three years in the service of one of its committees. Precedent has been all to the contrary. It is a well known historical fact that the General Court, like other legislative bodies in our democracy, reorganizes on political lines after every State wide election.

There is a complete change of officers, and the committees in each branch are appointed anew by the new presiding officer with the chairmanships going to members of the majority party. Tenure by one specific subordinate of one committee would be so incompatible with the responsibility and responsiveness of a new General Court to newly expressed popular will that only the clearest language would convey a purpose to achieve such an exceptional result.

What we say has its root in the Constitution of the Commonwealth. "The house of representatives shall be the judge of the returns, elections, and qualifications of its own members, as pointed out in the constitution; shall choose their own speaker; appoint their own officers, and settle the rules and orders of proceeding in their own house." Part II, c. 1, § 3, art. 10. *Dinan* v. *Swig,* 223 Mass. 516, 517–518. See *Coffin* v. *Coffin,* 4 Mass. 1, 34; *Hiss* v. *Bartlett,* 3 Gray, 468, 471–473.

These views herein expressed have been recognized in decisions of this court. In *Opinion of the Justices,* 302 Mass. 605, 610–611, it was stated that "One General Court cannot bind itself or its successors" to make an appropriation for a specific purpose. In *Commissioners of Public Works* v. *Cities Service Oil Co.* 308 Mass. 349, 354–355, 361, it was held that the conditions prescribed in an act of one Legislature to be included in licenses for structures to be erected in Boston harbor could not fetter succeeding Legislatures as to the terms of later licenses.

Our conclusion is fortified by examination of § 9A itself. Under that section a veteran shall not be involuntarily separated from his position "except subject to and in accordance with" G. L. (Ter. Ed.) c. 31, § 43, as appearing in St. 1945, c. 667, § 1, as amended, and § 45, as appearing in St. 1945, c. 667, § 2. He must be given a hearing before the appointing authority followed by a written notice of the decision with a full statement of the reasons. § 43 (a). If the decision is unfavorable, he must be given a hearing before a member of the civil service commission or some disinterested person designated by its chairman. After the

findings are reported to the commission "for action," the commission makes a decision in writing. "If the commission finds that the action of the appointing authority was justified, such action shall be affirmed; otherwise, it shall be reversed and the person concerned shall be returned to his office or position without loss of compensation." § 43 (b). The reasons for abolition of the office or position and the facts found by the commission "shall be subject to judicial review . . . as provided in section forty-five." § 43 (d). If the action of the appointing authority abolishing the office or position is affirmed by the commission, the person affected may "bring a petition in the district court within the judicial district of which such person resides, addressed to the justice of the court, praying that the action of the appointing authority and of the commission in . . . abolishing his office, may be reviewed by the court, and . . . it shall hear witnesses, review such action, and determine whether or not upon all the evidence such action was justified. If the court finds that such action was justified the action of the appointing authority and of the commission shall be affirmed; otherwise they shall be reversed and the petitioner shall be reinstated in his office or position without loss of compensation. The decision of the court shall be final and conclusive upon the parties . . . ." § 45. Thereafter there may be a petition for a writ of certiorari to correct substantial errors of law apparent on the record adversely affecting material rights. *McLaughlin* v. *Mayor of Cambridge,* 253 Mass. 193, 199–200. *Whitney* v. *Judge of the District Court of Northern Berkshire,* 271 Mass. 448, 458. *Mayor of Beverly* v. *First District Court of Essex,* 327 Mass. 56.

We have made this detailed enumeration of the procedural steps under our civil service statute, because we believe that it demonstrates the theoretical unsoundness of the petitioner's case. The purpose of the Legislature could not have been to clothe an employee in the position of the petitioner with a right to raise upon appeal the propriety of a decision of a legislative committee on a matter of its own internal management before the civil service commission, or

a judge of a District Court, or perhaps other courts. This is quite apart from constitutional aspects of the question.

Another difficulty with the petitioner's theory that his was "an office or position in the service of the commonwealth not classified" under c. 31 looms from a reading of the second sentence of § 9A: "If the separation in the case of such unclassified offices or positions results from lack of work or lack of money, such a veteran shall not be separated from his office or position while similar offices or positions in the same group or grade, as defined in section forty-five of this chapter, exist unless all such offices or positions are held by such veterans, in which case such separation shall occur in the inverse order of their respective original appointments." Not only does the record fail to disclose that there existed other "similar offices or positions in the same group or grade, as defined in section forty-five" of c. 30, but it is our view that there could be none because of the precise provisions of c. 30, § 45, as appearing in St. 1948, c. 311, § 1: "All appointive offices and positions in the government of the commonwealth, except those in the judicial branch and those in the legislative branch, but including clerical assistants of registers of probate, shall be classified by the division of personnel and standardization, subject to the approval of the governor and council, in services, groups and grades according to the duties pertaining to each office or position. Such classification shall be established by specifications defining for each grade the titles, duties and responsibilities, and minimum qualifications for entrance and promotion. The titles so designated shall be the official title of offices or positions included therein, and shall be set forth on all pay rolls, by name or code." Contrary to the petitioner's contention, we think that reference in § 9A to c. 30, § 45, imports the exception from classification of offices and positions in "the legislative branch," and shows that the position of director of fiscal affairs is one that never could have been classified.

To consider other matters which are argued by the respondents to be fatal to the petitioner's case would unduly prolong this opinion.                                      *Petition dismissed.*