JOHN J. CURRY vs. CITY OF CAMBRIDGE & others.

Middlesex.    May 5, 1966. — June 6, 1966.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Municipal Corporations,* Officers and agents.  *Public Officer.  Veteran.  Equity Jurisdiction,* Declaratory relief.

The office of city manager of a city governed under a Plan E charter, G. L. c. 43, §§ 93–116, as amended, when it accepted the War Veterans' Tenure Act, c. 41, § 112A, "subject to the provisions of its charter," was not within the operation of § 112A, and a veteran who had held that office for more than five years could be removed by the city council without compliance with its terms.  [31–32]

A bill in equity stating a controversy and a proper case for declaratory relief under G. L. c. 231A should not be dismissed where the defendant prevails on the merits; a decree declaratory of the merits should be entered.  [32]

BILL IN EQUITY filed in the Superior Court on January 26, 1966.

The suit was reported by *Thompson,* J.

*Mark E. Gallagher, Jr.  (Francis J. Roche* with him) for the plaintiff.

*Robert W. Meserve  (Charles R. Parrott* with him) for the defendants DeGuglielmo & others; *Andrew T. Trodden,* City Solicitor, for the City of Cambridge & another, also with him.

WILKINS, C.J.   The plaintiff in this bill for declaratory relief under G. L. c. 231A held the office of city manager of Cambridge from 1952 until 1966.   The defendants are the city; the nine members of the city council; Joseph A. DeGuglielmo (herein called the defendant) chosen by the city council to succeed the plaintiff; and Thomas M. McNamara, city clerk and at one time acting city manager designated by the city council under G. L. c. 43, § 103 (as amended through St. 1950, c. 353).   The case was heard on agreed facts and reported without decision by a judge of the Superior Court.   G. L. c. 214, § 31.

Since 1942 the city has been governed under a Plan E charter. G. L. c. 43, §§ 93–116, as amended. The plaintiff was the city's second city manager serving from 1952 and, as hereinafter discussed, either until the defendant's election on January 10, 1966, or until the plaintiff was allegedly removed pursuant to c. 43, § 103, by a majority of the council on February 11, 1966. In 1948 the city accepted St. 1947, c. 276, now G. L. c. 41, § 112A (herein called the War Veterans' Tenure Act).

The plaintiff has been reappointed or reëlected city manager by vote of a majority of the council and has taken oath before an appropriate city official every two years from 1952 to 1966 at approximately the time the city council organized under c. 43, § 97, following the municipal election. The plaintiff is a veteran as defined in G. L. c. 31, § 21, and is otherwise entitled to the protection of c. 41, § 112A, if that section is applicable to the office of city manager and if the plaintiff is still holding that office.

On January 10, 1966, after the organization of the council, the members by a vote of five to four elected the defendant to be city manager. Thereafter proceedings were begun under c. 43, § 103, to remove the plaintiff, and he was purportedly removed on February 11, 1966. On February 12, 1966, the defendant was "elected or appointed" city manager.

The plaintiff's argument is mainly an attempt, unsound we think, to develop a conflict between two statutes: The Plan E charter and the War Veterans' Tenure Act.

As set forth in the charter, G. L. c. 43, the government of the city and the general management and control of all its affairs, with stated exceptions, are vested in a city council (§ 95) of seven or nine members elected at large for terms of two years (§ 96). The council exercises all the legislative powers of the city except those reserved to the school committee and to the voters (§ 97). The council appoints the city manager, who is the chief administrative officer of the city. "*He shall hold office during the pleasure of the city council . . .*" (emphasis supplied). Before he may be removed he is entitled to a statement of reasons and has the

right publicly to be heard at a meeting of the council prior to final vote of removal, pending which the council may suspend him.   The council's action of suspending or removing the manager "shall be final, it being the intention of this provision to vest all authority and fix all responsibility for such suspension or removal in the city council" (§ 103). Many important powers of the city manager are enumerated in § 104.   It is his duty to act as chief conservator of the peace, to see to the execution of the laws and ordinances, to make reports and recommendations to the council and to keep it fully advised of the city's financial condition and future needs.   He prepares budgets.   He makes all appointments and removals in the departments, commissions, boards, and offices for which he is responsible.   He has all the powers formerly exercised by the mayor, board of aldermen, common council, and all other boards and committees, except the school committee, and except where otherwise provided in the charter.

The War Veterans' Tenure Act, G. L. c. 41, § 112A (inserted by St. 1947, c. 276), provides in material part: "A veteran, as defined in section twenty-one of chapter thirty-one, who holds in the service of a city which accepts this section by vote of its city council, *subject to the provisions of its charter* [emphasis supplied] . . . an office or position not classified under said chapter thirty-one, other than an elective office, an appointive office for a fixed term or the offices of city solicitor, assistant city solicitor, . . . legislative counsel, registrars of voters or other officers performing similar duties, or public school teachers, and has held such office or position for not less than five years, shall not be involuntarily separated from such office or position except subject to and in accordance with the provisions of sections forty-three and forty-five of said chapter thirty-one to the same extent as if said office or position were classified under said chapter. . . ."

Chapter 31 relates to Civil Service, and §§ 43 and 45 provide in detail for a hearing before the Civil Service Commission and for a judicial review.   There is no need to summarize these provisions.

A factor of high significance is that the War Veterans' Tenure Act itself prescribes that acceptance by the city is "subject to the provisions of its charter." These words of subordination must mean that the adoption of that àct can take effect only to the extent permitted by the charter and can achieve no amendment of the charter's terms. See *Flower* v. *Billerica,* 324 Mass. 519, 521–522; *Brucato* v. *Lawrence,* 338 Mass. 612, 617.

In this framework it is not easy to believe that the clear statement in c. 43, § 103, that the city manager shall hold office during the pleasure of the city council, whose decision on removal is final, does not continue to mean precisely what it says even after the acceptance of the War Veterans' Tenure Act. The enumerated powers and duties of the city manager are so closely coördinated with those of the city council in the general management of the city's affairs that the Legislature manifestly could not have intended that its incumbent should be allowed to remain in office even for a very short period of time against the city council's wishes; or that the removal of its incumbent should be controlled by proceedings of a prolonged and nonsummary character before the Civil Service Commission and subject to judicial review with all the delays those imply. It is entirely without present consequence that some offices are specifically excepted in the War Veterans' Tenure Act and that the city manager is not mentioned. That act does not necessarily cover every position not expressly excluded from its provisions. *Cieri* v. *Commissioner of Ins.* 343 Mass. 181, 185. See *Sullivan* v. *Committee on Rules of the House of Representatives,* 331 Mass. 135, 137. It is unthinkable that the powers and duties of the chief administrative officer of a city should vary from time to time and differ among Plan E cities depending merely upon whether the incumbent is or is not a veteran. It is small answer to say that the council either did not have to elect a veteran or could have removed the plaintiff before five years' service. Conviction is not carried by the fact that the city had an option to accept the two statutes. What has been said in *Sullivan* v. *Committee on Rules of the House of Repre-*

sentatives, supra, 331 Mass. at 137–138, and *Cieri* v. *Commissioner of Ins.*, supra, 343 Mass. at 185–186, is equally applicable to the case at bar. It is not a distinction of substance that these cases arose under G. L. c. 30, § 9A, relating to positions in the service of the Commonwealth. The plaintiff's attempted distinction of these cases does not squarely face their reasoning. The argument that veterans would be penalized or discriminated against by a construction of the statutes unfavorable to the plaintiff collapses of its own weight. We shall not take up space in discussion of the plaintiff's other contentions, the statement of each of which answers itself.

The bill states a controversy under G. L. c. 231A and should not be dismissed. *Booker'* v. *Woburn*, 325 Mass. 334, 336. *Morgan* v. *Banas*, 331 Mass. 694, 698. *County of Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.* 333 Mass. 405, 406. *Employers Mut. Liab. Ins. Co.* v. *Ford Motor Co.* 335 Mass. 504, 506.

A final decree is to enter declaring that the office of city manager in Cambridge is not within the operation of G. L. c. 41, § 112A.

*So ordered.*