ALAN S. BARKIN *vs.* MILK CONTROL COMMISSION
(and two companion cases[1]).

Suffolk.   May 15, 1979. — October 29, 1979.

Present: KEVILLE, BROWN, & DREBEN, JJ.

*Public Officer. Veteran. Commonwealth*, Officers and employees. *Milk Control Commission.*

Under G. L. c. 20, § 8, the position of Director of Milk Control is "given over to free administrative discretion," and, therefore, the procedural protections of c. 30, § 9A, the Veterans' Tenure Act, do not apply to that position. [520-522]

The State Board of Retirement had no authority under G. L. c. 32, § 16(2), to order the reinstatement of the Director of Milk Control, who had been removed by the Milk Control Commission. [522]

CIVIL ACTIONS commenced in the Superior Court on June 16, 1977, August 22, 1977, and September 8, 1977, respectively.

The cases were heard by *McGuane*, J., a District Court judge sitting under statutory authority.

*Alan S. Barkin*, pro se.

*Catherine A. White*, Assistant Attorney General, for the Milk Control Commission.

*Bernard S. Kaplan*, Special Assistant Attorney General, for the State Board of Retirement.

KEVILLE, J. These three cases, which were heard and decided on a single statement of agreed facts, arose from the attempt of the Milk Control Commission (commission) to dismiss Alan S. Barkin from his position as Director of Milk Control. See G. L. c. 20, § 8. The central question is whether the procedural protections of G. L. c. 30,

_____

[1] Alan S. Barkin *vs.* Milk Control Commission and Milk Control Commission *vs.* State Board of Retirement & another.

§ 9A (the Veterans' Tenure Act), and G. L. c. 32, § 16, apply to the position of Director of Milk Control. We agree with the conclusion of the trial judge that they do not.

Pursuant to G. L. c. 20, § 8,[2] Barkin was appointed Director of Milk Control by the commission on March 11, 1971, and the appointment was approved by the Governor on March 26, 1971. On April 22, 1977, the commission notified Barkin by letter that it intended "to reconsider an earlier ... decision to retain you" and that it would conduct a hearing before taking a vote on reconsideration.[3] After the hearing was completed, the commission voted unanimously on June 10, 1977, to terminate Barkin as Director, effective June 17, and notified him by letter of its decision. On June 16, 1977, the commission notified

---

[2] General Laws c. 20, § 8, as appearing in St. 1953, c. 604, § 1, provides:

"The commission, subject to the approval of the governor and council, shall appoint a director of the division of milk control, whose title shall be director of milk control, hereinafter referred to as the director. In addition to any duties imposed on him by, or under the authority of, any provision of sections seven to nine, inclusive, of this chapter, or of chapter ninety-four A, the director shall, at the request of the commission, attend any meeting of the commission, but shall have no vote. Subject to appropriation, the commission may appoint such other employees as may be necessary in order to execute effectively the functions by sections seven to nine, inclusive, and by chapter ninety-four A, vested in the commission and the director, respectively. The commission may expend for the necessary traveling expenses of its members, director and employees, incurred in the performance of their official duties, and for salaries, services and other necessary expenses of the commission, such sums as may be appropriated therefor."

[3] Among the matters cited by the commission as reasons for reconsidering its earlier decision to retain Barkin were (a) that Barkin had been convicted in the United States District Court for the District of Massachusetts of failure to file income tax returns, and that his appeal from that conviction had been dismissed, and (b) that Barkin had been suspended from the practice of law by the Supreme Judicial Court. The commission also stated in the letter that, in its opinion, Barkin was "not entitled to the protections provided by Civil Service laws," but that the commission had "decided to be guided by the notice and hearing procedures therein prescribed as a matter of convenience."

the State Board of Retirement (Retirement Board) of its decision.

Barkin subsequently requested a hearing before the Retirement Board. See G. L. c. 32, § 16(2). After that hearing, the Retirement Board determined that "no fair summary of the facts" of Barkin's termination had been filed with the board, "as required by Section 16 of Chapter 32," and ordered that he be reinstated as director. The commission refused to reinstate Barkin, and sought judicial review of the board's decision by filing an action in the nature of certiorari. The case was heard together with two actions brought by Barkin against the commission — one under G. L. c. 231A seeking a determination that the Veterans' Tenure Act applied to the position of Director of Milk Control, and the other in the nature of mandamus seeking enforcement of the Retirement Board's order that Barkin be reinstated. The parties agreed that, for the purposes of G. L. c. 30, § 9A,[4] Barkin was a veteran who held an office which was not classified under G. L. c. 31, not an elective office nor an appointive office for a fixed term, and not an office or position under G. L. c. 30, § 7. The parties also agreed that, for the purposes of G. L. c. 32, § 16,[5] Barkin was a member of Group 1 of the State

---

[4] General Laws c. 30, § 9A, as appearing in St. 1947, c. 242, provided in pertinent part:

"A veteran, as defined in section twenty-one of chapter thirty-one, who holds an office or position in the service of the commonwealth not classified under said chapter thirty-one, other than an elective office, an appointive office for a fixed term or an office or position under section seven of this chapter, and has held such office or position for not less than three years, shall not be involuntarily separated from such office or position except subject to and in accordance with the provisions of sections forty-three and forty-five of said chapter thirty-one to the same extent as if said office or position were classified under said chapter."

The amendment to the section effected by St. 1978, c. 393, § 8, is not material here.

[5] General Laws c. 32, § 16(2), as amended through St. 1967, c. 826, §§ 21-23, provides in pertinent part:

"The removal or discharge of any member in service classified in

retirement system and a veteran with at least ten years' creditable service.

1. Section 9A of c. 30 — the Veterans' Tenure Act — does not extend to every position not expressly exempted by the language of the section. See *Cieri* v. *Commissioner of Ins.*, 343 Mass. 181, 185-187 (1961) (§ 9A not applicable to the position of designee of Commissioner of Insurance to the Board of Appeal on Motor Vehicle Liability Policies and Bonds under G. L. c. 26, § 8A); *Hanley* v. *Commissioner of Ins.*, 355 Mass. 784 (1969) (§ 9A not applicable to the position of Deputy Commissioner of Insurance under G. L. c. 26, § 7); *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 231-233 & n.9 (1978) (§ 9A not applicable to the position of examiner in the Fraudulent Claims Board of the Division of Insurance under G. L. c. 26, § 7).

Barkin attempts to distinguish the *Cieri*, *Hanley* and *Dwyer* cases on the ground that the statutes which created the positions involved in those cases (G. L. c. 26, §§ 7 and 8A) gave the commissioner the specific power not only to appoint, but also to remove.[6] Barkin argues that,

---

Group 1, Group 2 or Group 4 who has attained age fifty-five and has completed fifteen or more years of creditable service, or any member so classified who has not attained age fifty-five but who has completed twenty or more years of creditable service, or any such member who is a veteran and has completed ten or more years of creditable service, shall not become effective unless and until a written notice thereof containing a fair summary of the facts upon which such action was based has been filed with the board. . . . Unless the board shall find that such removal or discharge was justified, such member shall forthwith be restored to his office or position without loss of compensation."

[6] Section 7 provides that the "commissioner of insurance may appoint and remove, with the approval of the governor and council, a first deputy, an actuary, a research analyst and a chief examiner and such additional deputies, examiners, assistant actuaries and inspectors as the service may require," and that the "commissioner may appoint and remove such clerical and other assistants as the work of the division may require."

Section 8A provides that the Commissioner of Insurance may "designate from time to time a representative to act in his place" on the Board of Appeal on Motor Vehicle Liability Policies and Bonds, and that "[a]ny such designation may be revoked at any time . . . ."

because the statute which created his position is silent as to removal (see note 2, *supra*), he can only be removed according to the procedures specified by the Veterans' Tenure Act.

We disagree with such a narrow interpretation of the cases. The test for deciding whether a position is exempted from the sweep of the Veterans' Tenure Act is not whether the statute creating the position contains express language regarding removal, but rather whether the statute suggests a legislative intention that the position be exempt. See *Sullivan* v. *Committee on Rules of the House of Representatives*, 331 Mass. 135, 137-138 (1954). The Veterans' Tenure Act does not apply to positions "given over to free administrative discretion by statute." *Dwyer* v. *Commissioner of Ins., supra* at 231 n.8. We think the position of Director of Milk Control is clearly a position given over to such free administrative discretion. The Director of Milk Control is the highest full-time position within the Division of Milk Control. The Director is appointed by the Milk Control Commission, which consists of three members who serve staggered six-year terms. G. L. c. 20, § 7. The Director's duties are established by the commission. G. L. c. 20, § 8 (note 2, *supra*). The Director is required to enforce the orders, rules and regulations of the commission, to investigate complaints, and to initiate legal proceedings to enforce compliance with commission orders, rules and regulations. G. L. c. 94A, §§ 3, 22. It is illogical that the Legislature could have intended the administratively awkward result that one could be appointed Director of Milk Control, could acquire tenure under the Veterans' Tenure Act, could outlast any of the members of the commission which appointed him, and could then successfully resist the efforts of the commission to remove him at its pleasure. See *Sullivan* v. *Committee on Rules*, 331 Mass. at 137. See also *Cieri* v. *Commissioner of Ins.*, 343 Mass. at 186. The power to remove a person from a position need not be explicit; it can be implied. *Adie* v. *Mayor of Holyoke*, 303 Mass.

295, 300 (1939); *Furlong* v. *Ayers*, 305 Mass. 455, 456-457 (1940).

2. As the position of Director of Milk Control is one from which the holder may be removed at pleasure, the Retirement Board had no authority under G. L. c. 32, § 16(2), to order Barkin's reinstatement. *Welch* v. *Contributory Retirement Appeal Bd.*, 343 Mass. 502, 508 (1962). See *Regan* v. *Commissioner of Ins.*, 343 Mass. 202, 206 (1961). At most, the only requirement was that the Retirement Board receive notice from the commission of Barkin's termination. That requirement was met by the commission's letter of June 16, 1977.[7]

3. Finally, Barkin argues that his termination was ineffective because no affirmative contemporaneous action was taken by the Governor after receiving a copy of the notice of termination from the commission. The trial judge made no explicit finding on this point, but an affidavit signed by the Governor was introduced at trial, apparently without objection, in which the Governor stated that he "approved" the termination. If the Governor's approval was required to render Barkin's termination effective (compare G. L. c. 26, §§ 7 and 8A, note 6, *supra*), a question which we do not decide, the evidence of his approval was sufficient.

The judgments and the orders entered February 16, 1978, are affirmed.

*So ordered.*

---

[7] It should be noted that the reasons for dismissal set forth by the commission in its letter to Barkin of April 22, 1977 (see note 3, *supra)* differed from those subsequently assigned by the commission in a letter sent to the Retirement Board. That letter, dated July 29, 1977, was delivered to the board after completion of the hearings and obviously was not considered by the board. No contention is made that the commission's stated reasons in its July letter were "gross subterfuge." See the *Welch* case, 343 Mass. at 508.