PAUL G. GREANEY *vs.* COLONEL, DEPARTMENT OF STATE POLICE (and a companion case[1]).

Nos. 99-P-412 & 00-P-745.

Middlesex. January 11, 2001. - October 11, 2001.

Present: BROWN, DREBEN, & DUFFLY, JJ.

Further appellate review granted, 435 Mass. 1107 (2002).

*Veteran. Commonwealth,* Officers and employees. *State Police. Statute,* Construction.

This court concluded that, under G. L. c. 22C and G. L. c. 30, §ʹ 46F, the colonel of the Department of State Police (department) has free administrative discretion to appoint and demote certain staff officers in the department, including majors; consequently, the colonel's decisions to demote two majors within the department were not subject to the procedural protections of G. L. c. 30, § 9A, the Veterans' Tenure Act. [791-795]

CIVIL ACTION commenced in the Superior Court Department on August 29, 1996.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

CIVIL ACTION commenced in the Superior Court Department on December 15, 1999.

The case was reported to the Appeals Court by *Diane M. Kottmyer,* J.

*Vida K. Berkowitz* for the plaintiffs.

*Ginny Sinkel,* Assistant Attorney General (*Eleanor Sinnott* with her) for the defendant.

DREBEN, J. In these two cases the plaintiffs, relying on G. L. c. 30, § 9A, the Veterans' Tenure Act (VTA), challenge orders demoting them from major in the State police department (department) to captain. Although the cases were not consoli-

---

[1] The companion case was brought by William F. Cronin against the colonel of the Department of State Police. The appeals have been consolidated for decision.

dated and arrived here from the Superior Court in different postures, we consider them together as our conclusion that the demotions were not subject to the protections of the VTA is dispositive in both instances.

We first set forth the undisputed facts of each case and its procedural posture, and then discuss the statutes on which we base our decision.

1. Paul Greaney, a Vietnam War veteran and a police officer since 1969 in the division of law enforcement of the Registry of Motor Vehicles, became, by virtue of St. 1991, c. 412, § 1 (an act consolidating certain police forces), a member of the department. After six months' service as a captain, Greaney was promoted to major and held the title of commander of the bureau of traffic operations. In 1996, a new colonel was appointed head of the department. See G. L. c. 22C, § 1. He proceeded to reorganize the department. He informed Greaney of his intent to eliminate the bureau of traffic operations and to demote him to captain. He allowed non-veteran majors junior to Greaney to retain their rank and promoted four captains to major, only one of whom was a veteran.

To avoid substantial reduction in salary and pension benefits, Greaney retired before the demotion took effect. He sought and obtained a hearing pursuant to G. L. c. 22C, § 43. The hearing officer upheld the demotion order, and Greaney, in accordance with c. 22C, § 43, appealed to the Superior Court. A judge of that court, while concluding that the VTA protected Greaney from demotion, ruled that the issue was moot. Noting that the issue was not simple, he determined that Greaney had not been constructively discharged. By retiring while still a major after bringing the action seeking annulment of the demotion, Greaney, the judge held, had abandoned the challenge. Accordingly, the judge allowed the defendant's motion for summary judgment. This is an appeal by Greaney from the ensuing judgment.

2. William Cronin joined the State police in 1969 and was on military leave between February, 1971 until December, 1972 when he returned to duty as a trooper. He rose through the ranks and was promoted to major in 1990. In 1996, he was appointed commander of Troop F Logan Airport. A new colonel,

who took office in 1999, decided not to retain Cronin as major. Advised verbally that his demotion would be effective December 18, 1999, Cronin sought a hearing pursuant to G. L. c. 22C, § 43, and, on December 15, 1999, filed an action in the Superior Court seeking declaratory and injunctive relief against his demotion.[2] At the time he filed his complaint, no hearing had taken place, but the judge noted that the affidavit of the colonel established that it would have been futile to require Cronin to exhaust his right to a hearing.

After analyzing the relevant statutes, the judge concluded that G. L. c. 30, § 46F, and c. 22C, § 10, "evidence a legislative intent that individuals promoted to mid and upper management positions in the state police not acquire tenure in those positions pursuant to the veterans' tenure act." Recognizing the pendency of the Greaney case in this court in which another judge of the Superior Court had stated in dictum that the VTA applies to a demotion of a major in the department, and aware that Greaney was contesting the conclusion of mootness, the judge, at Cronin's request, reported the case to this court. Citing the uncertainty as to the correctness of her ruling, she also ordered the defendant not to demote Cronin until this court has ruled on the issue or vacated her order.[3]

3. We turn now to the relevant statutes. First, of course, is G. L. c. 30, § 9A, set out in the margin,[4] which provides that a veteran who has held an appointive office not classified under

[2] The judge in the Greaney case had found it "significant" that Greaney did not obtain, or even seek, any kind of temporary restraining order.

[3] She noted that if she did "not preserve the status quo, Cronin, like Greaney, will be forced to choose between immediate retirement and the risk of permanent reduction in his pension benefits if he is unsuccessful on appeal."

[4] Section 9A of G. L. c. 30 provides:

> "A veteran, as defined in section one of chapter thirty-one, who holds an office or position in the service of the commonwealth not classified under said chapter thirty-one, other than an elective office, an appointive office for a fixed term or an office or position under section seven of this chapter, and has held such office or position for not less than three years, shall not be involuntarily separated from such office or position except subject to and in accordance with the provisions of sections forty-one to forty-five, inclusive, of said chapter thirty-one to the same extent as if said office or position were classified under said chapter. If the separation in the case of such unclassified offices or positions results from lack of work or lack of money, such a veteran shall

civil service, G. L. c. 31 (both Greaney and Cronin are in this category, see G. L. c. 22C, § 10), for not less than three years shall not be involuntarily separated from such office except in accordance with the protections of the civil service law.

Although, on its face, the statute appears to cover both plaintiffs, the protection of the VTA "does not necessarily extend to every position which is not expressly excluded from its provisions. See *Sullivan* v. *Committee on Rules of the House of Representatives*, 331 Mass. 135, 137." *Cieri* v. *Commissioner of Ins.*, 343 Mass. 181, 185 (1961). "The test for deciding whether a position is exempted from the sweep of the Veterans' Tenure Act is not whether the statute creating the position contains express language regarding removal [or demotion,[5]] but rather whether the statute suggests a legislative intention that the position be exempt." *Barkin* v. *Milk Control Commn.*, 8 Mass. App. Ct. 517, 521 (1979). The VTA does not apply to those positions over which an administrator has "free administrative discretion." *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 231 n.8 (1978). *Barkin* v. *Milk Control Commn., supra* at 521.

The colonel is appointed by the Governor and serves for a term coterminous with him or her. He is the executive and administrative head of the department and is given broad powers over its administration and organization, including the right to abolish or consolidate its divisions and other units. G. L. c. 22C, § 3. Chapter 22C provides for two kinds of promotions after initial appointments to the department: those for positions below major are set forth in § 26, and those for major and lieutenant colonel in § 27. The latter two positions together with that of colonel are termed "staff officers" in § 1. Section

---

not be separated from his office or position while similar offices or positions in the same group or grade, as defined in section forty-five of this chapter, exist unless all such offices or positions are held by such veterans, in which case such separation shall occur in the inverse order of their respective original appointments."

[5]Although the defendant in Greaney contends that the VTA applies only to separations from employment and not demotions, both judges of the Superior Court rejected that reading, as do we. As the judge in Cronin noted, citing to *Provencal* v. *Police Dept. of Worcester*, 423 Mass. 626, 630 (1996), the statute refers to separation from an office or position, not from employment.

26 prescribes detailed requirements, including written examinations and evaluations, for the promotion of uniformed members[6] to other than staff officer positions. In contrast, § 27 merely provides that any vacancy that occurs in the title of lieutenant colonel shall be filled from uniformed members who are majors or captains, and any vacancy in the title of major shall be filled from uniformed members who hold the title of captain. An affidavit of the colonel in the Cronin case indicates that his "command staff" on whom he relies to implement his policies consists of those personnel who hold the title of major and above.

The Cronin record indicates that in February, 2000, there were twenty-one staff officers — the colonel, four lieutenant colonels, and sixteen majors — and a total complement of 2,252 uniformed members. The wide discretion accorded the colonel in promotions to staff officers and their relatively small number — less than one per cent of the total uniformed membership — lead us to conclude that the legislative intention was that the colonel have "free administrative discretion," see *Barkin* v. *Milk Control Commn.*, 8 Mass. App. Ct. at 521, to appoint and demote those officers who constitute what he calls his "command staff," those upon whom he relies to carry out his policies. If the VTA were to apply, the VTA-protected appointees to a colonel's command staff would hamstring succeeding colonels and prevent them from choosing as their immediate staff the persons upon whom they wish to rely.[7]

We are buttressed in our conclusion by G. L. c. 30, § 46F, enacted in 1981, a statute providing that, in general, middle and upper level managerial positions are not subject to the VTA.[8] Section 46F provides:

"Notwithstanding the provisions of section[] nine A . . .

---

[6]Uniformed members are defined in G. L. c. 22C, § 1, as members of the department who have been appointed under § 10.

[7]Although the colonel may assign or reassign or transfer any uniformed member of the department regardless of rank, see G. L. c. 22C, § 10, and hence could put his own people on the "command staff," it would be anomalous and not conducive to morale to have the "command staff" consist of officers of inferior rank.

[8]The paucity of decisions concerning the application of the VTA to managers after that date is explained by the passage of G. L. c. 30, § 46F.

of this chapter or any other provision of law, after June twenty-seventh, nineteen hundred and eighty-one, no person appointed to a position allocated to job group M-V through M-XII, inclusive, of the management salary schedule provided in section forty-six C shall acquire tenure in any such position."

The Superior Court judge in Cronin made a carefully reasoned argument that § 46F applies to the position of major in the department despite the strict literal reading urged by Cronin.[9] We need not resolve the issue of the application of § 46F because, at the very least, that section reflects a general policy

---

[9]The judge pointed out that G. L. c. 22C, § 10, while exempting positions in the department from the requirements of c. 31, provides that the classification of positions "shall be subject to the provisions of section forty-five" of c. 30. That section requires the personnel administrator to establish and administer an office and position classification plan and a pay plan for the Commonwealth. In classifying any office or position, the administrator shall, inter alia, "group into single classes all . . . offices and positions, regardless of agency or geographical location, which are substantially alike in the duties, responsibilities, organizational relationships, qualifications, and other significant characteristics. . . ." With respect to the pay plan, c. 30, § 45(3), provides: "the personnel administrator shall allocate . . . each such office or position to the appropriate job group in the salary schedule set forth in section forty-six or forty-six C, excepting such offices and positions the pay for which is or shall be otherwise fixed by law . . . and all offices and positions in the same class shall be allocated to the same job group."

Since the pay for those achieving the rank of lieutenant or above, including major, in the department is "otherwise fixed" as it is set by c. 22C, § 28A, the administrator is not required to allocate the position of major to a specific job group of the salary schedule of c. 30, § 46C. For this reason, Cronin argues that § 46F does not apply to managers in the department. The judge, however, considered this reading too literal as the provisions relating to the pay plan and those relating to the classification plan overlap and must be read together. The judge stated, "At the very least section 10 of G. L. [c.] 22C requires the administrator to allocate positions in the state police to a class and to place in that class comparable positions in other fields which are subject to the salary schedule. Under the express language of the statute, allocation of the latter positions to a job group in the management salary schedule is a de facto allocation to the same job group of all other positions in that class, including positions in the State Police."

Despite the mandatory requirement of c. 30, § 45, the administrator did not classify the position of major. The judge was however persuaded by evidence that had the administrator classified positions, the position of major would be allocated to the same class as positions subject to the management salary scale which have been allocated to the job group defined in § 46F of group M-V or higher.

of the Legislature that G. L. c. 30, § 9A, should not apply to middle and upper management positions.

We also need not reach the question whether there was a constructive ʾdischarge in the Greaney case, see *GTE Prods. Corp.* v. *Stewart*, 421 Mass. 22, 33-34 (1995); *Rubin* v. *Household Commercial Financial Servs., Inc.*, 51 Mass. App. Ct. 432, 439-440 (2001), as summary judgment for the defendant was warranted based on our conclusion that the VTA does not apply to a demotion of a major in the department. Since "a correct ruling of the trial court will be upheld, even if the appellate court relies on a different ground than the one relied on by the trial court," *Kelly* v. *Avon Tape, Inc.*, 417 Mass. 587, 590 (1994), the judgment in Greaney *vs.* Colonel, Massachusetts Department of State Police is affirmed. As to the question reported to us in Cronin *vs.* Colonel, Massachusetts Department of State Police, we hold that the judge was correct in ruling that the veterans' tenure provisions of G. L. c. 30, § 9A, do not apply to the position of major in the department.

*So ordered.*