WALTER R. LEGER *vs.* COMMISSIONER OF REVENUE.

Worcester. April 5, 1995. - September 13, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Taxation*, Sales and use tax, Tax lien. *Due Process of Law*, Taxation.

The attachment of a tax lien to a residence by the State Department of
Revenue to secure the payment of assessed taxes without a prior judi-
cial hearing did not violate the property owner's right to due process
under the Fourteenth Amendment to the Constitution of the United
States or art. 10 of the Declaration of Rights of the Massachusetts
Constitution, where the attachment followed the owner's refusal to pay
the taxes or to post some security for payment in lieu of the attachment
and where all taxpayers' due process rights were adequately protected
by the available postdeprivation procedures. [171-175]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 1, 1993.

The case was heard by *Barbara A. Lenk*, J.

The Supreme Judicial Court granted an application for di-
rect appellate review.

*Carl Emmett Baylis* for the plaintiff.

*Pierce O. Cray*, Assistant Attorney General, for the Com-
missioner of Revenue.

LIACOS, C.J. The plaintiff, Walter R. Leger, filed a com-
plaint in the Worcester Superior Court seeking declaratory
and injunctive relief from a tax lien attached to his residence
by the Department of Revenue (department) to secure pay-
ment of taxes allegedly owed by Leger. In Count I, Leger
sought a declaration that the cost of labor in reupholstering
furniture, a commercial activity in which he engaged, is a
service which is not subject to the sales tax under G. L.
c. 64H, §§ 1 and 2 (1994 ed.). In Count II, Leger alleged
that the placing of a lien on his residence prior to a judicial

hearing was in violation of the Fourteenth Amendment to the United States Constitution and art. 10 of the Declaration of Rights of the Massachusetts Constitution. Leger moved for partial summary judgment on Count II regarding his due process rights. The Commissioner of Revenue's (commissioner's) motion to dismiss Count I under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), for failure to exhaust administrative remedies was granted by a judge in the Superior Court.[1] With respect to Count II, the judge denied Leger's motion for summary judgment and allowed the commissioner's motion for partial judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974), and motion to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[2]

Leger appealed to the Appeals Court, claiming that the attachment of a tax lien to his residence prior to a judicial hearing violated his right to due process under the Fourteenth Amendment and art. 10. We granted his application for direct appellate review. We now affirm.

The facts as stated by the judge are these.[3] Leger operated a sole proprietorship called Office Chair Maintenance Company (company) between 1975 and October, 1987. The company reupholstered worn office chairs brought in by customers. Leger collected a sales tax from his customers for the cost of materials, but did not charge or collect sales tax on the cost of labor.

After an examination of Leger's books by the audit bureau of the department, the department determined that Leger should have collected sales tax on the labor charges in his

---

[1] The issue whether labor charges associated with the reupholstering of furniture are subject to sales tax under G. L. c. 64H, §§ 1 and 2, is still pending before the Appellate Tax Board.

[2] The partial judgment consisted of a declaration that the commissioner did not violate Leger's due process rights.

[3] As stated by the judge, the material facts contained in the record are not in dispute.

reupholstering business.[4] As a result, the department disallowed Leger's deduction for his labor charges. On September 14, 1990, the audit bureau sent two notices of intention to assess sales and use tax, one to the company for the period October 1, 1989, through March 31, 1990, and one to Leger doing business as the company for the periods January 1, 1985, through September 30, 1985, and July 1, 1987, through September 30, 1989. By letter dated September 17, 1990, Leger waived his right to an office conference pursuant to G. L. c. 62C, § 26 (*b*), but requested, and was granted, an administrative hearing before the department's appeal and review bureau (appeal bureau). Leger was notified by a letter dated April 24, 1992, of the appeal bureau's opinion that reupholstering constitutes the taxable sale of tangible personal property.

---

[4]The commissioner may assess additional taxes if it is determined that a taxpayer owes more than reported on the submitted tax return. G. L. c. 62C, § 26 (*b*) (1994 ed.). Prior to an assessment being made, the commissioner must send the taxpayer a notice of intention to assess, showing the type of tax and the relevant tax periods. *Id.* At the time of this action, a taxpayer had thirty days after the issuance of the notice to request, and be available for, a conference. According to the department's administrative procedures in place at the time of this action, the taxpayer could also request a discretionary hearing before the appeal and review bureau (appeal bureau). (According to an affidavit of the chief of the appeal bureau, these procedures were amended, effective July, 1993, to provide all taxpayers, upon request, with a preassessment hearing before the appeal bureau, and the conference is no longer an option.) The commissioner may assess the taxes once these remedies have been exhausted. G. L. c. 62C, § 26 (*b*).

When the deficiency is assessed, a lien automatically is created on the taxpayer's assets. G. L. c. 62C, § 50 (*a*) (1994 ed.). In the case of a lien on real property, however, a lien is not valid against "any mortgagee, pledgee, purchaser or judgment creditor" until notice of the lien is recorded in the registry of deeds. G. L. c. 62C, § 50 (*b*) (1994 ed.). A taxpayer may contest a deficiency assessment by requesting that the commissioner abate the assessment. G. L. c. 62C, § 37 (1994 ed.). Moreover, the taxpayer may request a hearing on the abatement request. *Id.* If the commissioner does not grant the abatement request, the taxpayer may appeal to the Appellate Tax Board (board). G. L. c. 62C, § 39 (1994 ed.). An adverse decision by the board may be appealed to the Appeals Court. G. L. c. 58A, § 13 (1994 ed.). A taxpayer may also seek declaratory relief in the Superior Court in limited circumstances. See, e.g., *Space Bldg. Corp.* v. *Commissioner of Revenue,* 413 Mass. 445, 448-449 (1992).

The commissioner made a deficiency assessment on May 11, 1992, and mailed a notice of assessment to Leger on June 23, 1992. A demand for payment of the assessed taxes was sent to Leger on August 8, 1992, and a consolidated bill was mailed on September 1, 1992.

On September 1, 1992, Leger applied to the commissioner, pursuant to G. L. c. 62C, § 37, for an abatement of the sales tax which had been assessed. The commissioner denied his application in two separate rulings, one dated on or before December 16, 1992,[5] and the other dated April 5, 1993, each of which Leger appealed to the Appellate Tax Board (board) pursuant to G. L. c. 62C, § 39 (c). These issues are still pending.

While Leger pursued these administrative remedies, he did not pay any of the contested taxes. On September 2, 1992, the department notified Leger that, if he failed to make payment within ten days, it would institute collection actions to secure payment of the amounts owed. The letter informed Leger that "[s]pecifically, these actions can and will include the filing of tax liens against your property, levying your bank accounts and/or wages and seizure of your assets." On November 6, 1992, the department filed a notice of Massachusetts tax lien (lien notice) against Leger's residence with the Secretary of the Commonwealth under G. L. c. 62C, § 50 (1994 ed.).[6] Notice of the lien was also recorded in the Worcester County registry of deeds.

Prior to the lien notice's being filed, Leger had had a hearing before the department's appeal bureau, but had had neither a determination of the commissioner's abatement decision, a hearing before the board, nor a judicial hearing.

---

[5]The date of the first denial is unclear in the record. Logically, it must have preceded December 16, 1992, the date when Leger filed his appeal with the board.

[6]Leger contends that he first learned of the lien on December 11, 1992, when his application for a home equity line of credit was denied because of the lien's existence. The Superior Court judge determined that this contention was not a material fact in the context of her decision.

Leger argues that he has a right, under both the Federal and Massachusetts Constitutions, to notice and a judicial hearing before a lien securing payment of taxes may be attached to his real property. We recognize that the attachment of a lien to an individual's residence affects a property interest that is protected by the due process clause of the Fourteenth Amendment. *Connecticut* v. *Doehr*, 501 U.S. 1, 12 (1991). See *Mathews* v. *Eldridge*, 424 U.S. 319, 333 (1976). In a case such as this one, the procedural requirements of art. 10 are substantially the same as those under the Fourteenth Amendment. *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 514, 515 & n.2 (1977).

Generally, due process requires that an individual must receive notice and a hearing prior to governmental deprivation of property. *United States* v. *James Daniel Good Real Property*, 510 U.S. 43, 52-53 (1993). *Fuentes* v. *Shevin*, 407 U.S. 67, 80 (1972). However, as for the assessment and collection of taxes, it is well established that postdeprivation procedures may satisfy the demands of due process.[7] *Reich* v. *Collins*, 115 S. Ct. 547, 550 (1994). *McKesson Corp.* v. *Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation of Fla.*, 496 U.S. 18, 37 (1990). *Fuentes* v. *Shevin*, *supra* at 91-92. *Phillips* v. *Commissioner of Internal Revenue*, 283 U.S. 589, 595-597 (1931). *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare*, 368 Mass. 15, 24-25, cert. denied, 423 U.S. 929 (1975). Accordingly, the commissioner

---

[7]Allowing taxpayers to litigate the validity of assessed taxes prior to payment could pose a threat to the government's financial security, "by creating unpredictable interim revenue shortfalls against which the State cannot easily prepare, and by making the ultimate collection of validly imposed taxes more difficult." *McKesson Corp.* v. *Division of Alcoholic Beverages & Tobacco, Dep't of Business Regulation of Fla.*, 496 U.S. 18, 37 (1990).

Leger argues that recent decisions of the Supreme Court require us to reconsider the rule that postdeprivation proceedings in tax cases satisfy due process. E.g., *United States* v. *James Daniel Good Real Property*, 510 U.S. 43, 59-60 (1993); *Fuentes* v. *Shevin*, 407 U.S. 67, 91-92 (1972). The Supreme Court, however, recently reaffirmed the constitutionality of postdeprivation proceedings. *Reich* v. *Collins*, 115 S. Ct. 547, 550 (1994). Thus, Leger's argument is refuted by the Supreme Court.

need not provide to Leger any forum for a hearing before collecting taxes that have been assessed.

Leger does not dispute the constitutionality of postdeprivation proceedings per se. Rather, Leger contends that where the deprivation is the attachment of a lien to real property, as opposed to the payment of money, predeprivation proceedings are necessary to satisfy due process. We are not convinced. We see no significant distinction between a deprivation by payment of money and a deprivation by attachment of a lien to real property.[8]

General Laws c. 62C, § 53 (*a*) (1994 ed.), confers authority on the commissioner to "levy upon all property and rights to property," including a person's real estate or bank account, belonging to a person who has not paid an assessed tax within ten days after demand. *Prudential-Bache Sec., Inc.* v. *Commissioner of Revenue*, 412 Mass. 243, 245 (1992). Thus, in our reported decisions, taxpayers typically have paid assessed taxes and penalties prior to participating in administrative and judicial proceedings regarding the validity of tax assessments. See, e.g., *Commissioner of Revenue* v. *Kelly-Springfield Tire Co.*, 419 Mass. 262, 264 (1994) (taxpayer paid assessment in full and then filed application for abatement); *Space Bldg. Corp.* v. *Commissioner of Revenue*, 413 Mass. 445, 446 (1992) (taxpayer paid taxes together with interest accrued and then filed applications for abatement); *Commissioner of Revenue* v. *New England Power Co.*, 411 Mass. 418, 420 (1991) (taxpayer paid adjusted assessments and then filed applications for abatement).

---

[8]The taxpayer's argument that due process requirements in tax deficiency cases are more stringent than those in tax collection cases is without merit. This distinction between "deficiency" and "collection" cases appears to be nothing more than a matter of semantics. In this case, for example, the department asserted that there was a deficiency in Leger's sales tax payment, so it assessed additional sales taxes and then sought to collect them. Leger disputes whether there was a deficiency and seeks to prevent the department from collecting additional taxes. Thus, this case might be called a "deficiency" case, a "collection" case, or both.

During the ten-day period following the demand for payment of the assessment, Leger could have paid the assessment in cash, or posted a bond for the amount due. Furthermore, pursuant to G. L. c. 62C, § 50 (f), and the department's administrative procedures, at any time following the attachment of his residence, Leger could have requested from the commissioner a release of the lien if he had offered alternative securities for the payment of the assessed taxes. Leger did not avail himself of any of these opportunities, and as a result, the department attached a lien to his property. Accordingly, it was only through Leger's refusal to pay the assessed taxes or to post some security for the payment of the assessed taxes that his real property was attached. Leger cannot now argue that he is entitled to different procedural rights from those afforded to taxpayers who pay their assessments or post bond and then argue the validity of the tax through the abatement process.

We conclude that the due process rights of Leger, like any other taxpayer, can be satisfied by postdeprivation proceedings. Although the attachment of a tax lien to his property may result in some hardship to Leger, cf. *Bob Jones Univ.* v. *Simon*, 416 U.S. 725, 747 (1974) (recognizing "precarious financial position" which may be faced by nonprofit entity while tax dispute is resolved), he is not in a position significantly different from a taxpayer who pays the assessment and proceeds with postdeprivation remedies. Leger may lose the ability to mortgage or otherwise to alienate his property, but similarly the taxpayer who pays the assessment up front loses the ability to use the money to make purchases or other investments. Leger will not receive interest as might a taxpayer who in the end is entitled to "a refund of overpayment," see 803 Code Mass. Regs. § 62C.26.1 (17) (d) (1993), but he retains the ability to use and enjoy his property, albeit to a lesser extent.

As the record in this case demonstrates, the procedures used by the department clearly notified Leger that, if he failed to pay the assessment within ten days of the demand, his property would be attached. Indeed, G. L. c. 62C, § 50

(*a*), specifically provides that a tax lien "shall arise [on all property of the taxpayer] at the time the assessment is made or deemed to be made." Leger received this demand for payment after he had participated in proceedings before the appeal bureau of the department.[9]

As his final argument, Leger contends that the prospect of a long-delayed proceeding before the board violates due process.[10] Leger does not argue that such proceedings themselves are not consonant with due process, but rather that the long delay before the board considers his case will frustrate the requirements of due process. This may be so, but we believe that this issue is a matter initially for the Legislature, or, one that can be addressed only when it is ripe for judicial review, in an appeal from a decision of the board. Cf. *Schipani* v. *Commonwealth*, 382 Mass. 685, 686 (1980) (affirming single justice's dismissal of action where factual record not adequate enough to address constitutional claim).

The judgment allowing the commissioner's motion to dismiss is affirmed.

*So ordered.*

---

[9]We need not discuss whether the proceedings before the appeal bureau, which could be characterized as a predeprivation hearing in this case, would satisfy the demands of due process.

[10]Leger asserts that even when his case is heard by the board, the board will not consider the constitutionality of the attachment of his property. In light of our treatment of the attachment as the equivalent of paying the assessment up front, we see no reason why the board would need to consider the constitutionality of the attachment.