# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

---

SANDRA L. DURBIN & another[1] *vs.* BOARD OF SELECTMEN OF
KINGSTON.

No. 02-P-1455.

Plymouth. December 16, 2003. - September 15, 2004.

Present: LAURENCE, McHUGH, & TRAINOR, JJ.

*Practice, Civil,* Action in nature of certiorari, Relief from judgment. *Municipal Corporations,* Selectmen, Nuisance. *Dog. Nuisance.*

Discussion of the standard of review of an appeal of a decision in a proceeding in the nature of certiorari under G. L. c. 249, § 4. [4-6]

In an action in Superior Court seeking review in the nature of certiorari of a District Court order affirming a town board's decision ordering certain dogs to be destroyed, the judge did not err in denying the plaintiffs (the owners of the dogs) leave to present additional evidence, where the proffered evidence, which was essentially cumulative extrinsic evidence that arose after the incident in question, failed to undermine the findings of the District Court. [6-9]

In an action in Superior Court seeking review in the nature of certiorari of a District Court order, the plaintiffs failed to demonstrate that, even if certain

---

[1] Her husband, Robert J. Durbin.

alleged procedural defects constituted error, their substantial rights were affected thereby in any way, much less injuriously. [10-11]

CIVIL ACTION commenced in the Superior Court Department on December 23, 1999.

The case was heard by *Geraldine S. Hines*, J., on a motion for judgment on the pleadings.

*David H. Abbott* for the plaintiffs.

*Patricia A. Cantor* for the defendant.

LAURENCE, J. On April 10, 1999, two dogs belonging to the Durbins, then residents of Kingston, attacked a small child. Acting in response to a complaint from the child's father, pursuant to G. L. c. 140, § 157,[2] the Kingston board of selectmen determined that the two dogs were "a nuisance by reason of vicious disposition," and ordered the dogs to be destroyed. The proceedings arising from that complaint have worked their way from the Kingston board of selectmen to the District Court clerk-magistrate to a judge of the District Court to a judge of the Superior Court, with each tribunal determining the propriety of the order to destroy the dogs.

The Durbins here argue that the Superior Court judge, who heard the matter on their petition for certiorari relief pursuant to G. L. c. 249, § 4, committed numerous errors, which distill into

---

[2]General Laws c. 140, § 157, as amended by St. 1995, c. 286, provides in part:

> "If any person shall make complaint in writing to the selectmen of a town . . . that any dog owned or harbored within . . . their jurisdiction is *a nuisance by reason of vicious disposition . . .* such selectmen . . . shall investigate or cause to be investigated such complaint, including an examination on oath of the complainant, and *may make such order concerning the restraint or disposal of such dog as may be deemed necessary.* Within ten days after such order the owner or keeper of such dog may bring a petition in the district court within the judicial district of which the dog is owned or kept . . . praying that the order may be reviewed by the court, or magistrate thereof, and . . . the magistrate shall [thereafter] review such action, hear the witnesses and affirm such order unless it shall appear that it was made without proper cause or in bad faith, in which case such order shall be reversed. Any party shall have the *right to request a de novo hearing on the petition before a justice of the [district] court. The decision of the court shall be final and conclusive upon the parties.*" (Emphasis added.)

the following contentions: (1) the judge erred in denying their motion for leave to present additional evidence regarding developments subsequent to the District Court trial; (2) the judge erred in failing to address certain procedural defects that occurred in the course of the Kingston board of selectmen's investigation; and (3) the judge erred in her determination that the District Court judge committed no error of law in issuing the order to destroy the dogs. Our review of the record reveals, however, no basis for reversing the Superior Court judge's dismissal of the Durbins' petition.

*The incident.* The following facts were relied upon by the judge and are supported by the District Court record. Sandra and Robert Durbin resided at 19 Copper Beach Drive in Kingston in April, 1999. On April 10, 1999, Matthew Erbe, their neighbor, brought his two year old son, Daniel, and eleven year old Krystina Paquette, Sandra Durbin's cousin, to the Durbins' back yard to play. Mr. Erbe left the children alone in the yard and returned to his home. At the time, the Durbins' dogs were in the house. Shortly thereafter, Krystina and Daniel opened the unlocked back door of the Durbins' home in order to use the bathroom. As soon as they had opened the door, Bear (a shepherd-rottweiler mix) and Sampson (a rottweiler) — each weighing about one hundred pounds — rushed out and attacked Daniel. The attack resulted in multiple puncture wounds and lacerations to the child's face, leaving him covered in blood and with serious injuries. Krystina, the only eyewitness to the attack, said, just after it occurred, that "the dogs attacked Daniel" and "it was Bear and Sampson who did the attack."[3]

*The procedural aftermath.* As a result of the attack, Mr. Erbe filed a complaint with the Kingston board of selectmen (board), and an investigatory hearing was held, pursuant to G. L. c. 140, § 157, on May 25, 1999. The board concluded that the two dogs "did in fact savagely attack and injure Daniel," that the attack on Daniel "was unprovoked, and that the dogs should not be relocated as it is likely they continue to be a menace to public safety" as a result of their "vicious disposition." The board ordered that both dogs be "humanely euthanized."

---

[3]At the time of the attack, a third Durbin dog, Bandit (a smaller German shepherd), was in the house and also came out the back door but did not join in the mauling of Daniel.

The Durbins petitioned the Plymouth District Court for review of the board's order. On June 28, 1999, a clerk-magistrate affirmed the board's decision. The Durbins thereupon requested a de novo hearing on their petition by a District Court judge. During a three-day trial, the parties presented testimony from eighteen witnesses, including six expert witnesses in canine behavior, supporting the Durbins' position that the underlying incident did not establish that the dogs were of vicious disposition. Based on a de novo review of the evidence, the District Court judge, on November 22, 1999, affirmed the board's order to destroy Bear and Sampson. The Durbins immediately filed a motion to stay the order pending disposition of their about-to-be-filed petition for certiorari. The judge allowed the stay, conditioned on the dogs' being turned over to the Kingston animal control officer.[4]

On December 23, 1999, the Durbins filed their petition in the Superior Court, pursuant to G. L. c. 249, § 4. On July 16, 2001, they moved for leave to present additional evidence. That motion and a subsequent motion for reconsideration were denied, and the Durbins' attempt to obtain an interlocutory appeal in this court was rejected. Ultimately, the Durbins filed a motion for judgment on the pleadings.[5] On June 20, 2002, a Superior Court judge denied the Durbins' motion, affirmed the destruction order issued by the District Court judge, and dismissed the certiorari petition. After a denial of their motion for reconsideration, the Durbins filed this appeal.

*The standard of review.* As noted, the Durbins sought Superior Court review of the District Court judge's decision under G. L. c. 249, § 4,[6] which provides for review in the nature of certiorari to correct claimed errors of law apparent on the record

[4]At all times since the allowance of the Durbins' stay motion, the dogs have resided at the Cam-Belles Country Inn, a licensed kennel facility. On January 19, 2000, the Durbins filed a motion to modify terms of the stay, which was denied by another Superior Court judge on the ground that the Durbins' petition for certiorari had "virtually no likelihood of success."

[5]In a certiorari proceeding, the pleadings contain the record on the basis of which the reviewing court decides the case. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 758 (1976).

[6]General Laws c. 249, § 4, as amended through St. 1986, c. 95, in relevant part provides:

made in proceedings, as here, not otherwise reviewable, "even when a statute provides that the ruling of the court whose decision is sought to be reviewed 'shall be final.' " *Bartlett* v. *Greyhound Real Estate Fin. Co.*, 41 Mass. App. Ct. 282, 290 (1996). "The relief sought in an action in the nature of certiorari is 'to correct substantial errors of law *apparent on the record* adversely affecting material rights [of the parties].' *Commissioners of Civil Serv.* v. *Municipal Ct. of Boston*, 369 Mass. 84, 90 (1975), quoting from *Sullivan* v. *Committee on Rules of the House of Representatives*, 331 Mass. 135, 139, (1954)." (Emphasis added.) *Cambridge Hous. Authy.* v. *Civil Serv. Commn.*, 7 Mass. App. Ct. 586, 587 (1979). See *Carney* v. *Springfield*, 403 Mass. 604, 605 (1988), quoting from *Murray* v. *Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 511 (1983) (certiorari review encompasses only those errors "which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public").

Our function in reviewing an appeal of a decision in a certiorari proceeding is a limited one. In the absence of substantial legal error, we review the record to determine whether that decision was supported by substantial evidence,[7] see *Bielawski* v. *Personnel Administrator of the Div. of Person-*

---

"A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court . . . ."

[7]The standard of review under G. L. c. 249, § 4, has in recent decades been held to vary according to the nature of the action for which review is sought. See *Boston Edison Co.* v. *Boston Redev. Authy.*, 374 Mass. 37, 48-49 (1977). As proceedings under G. L. c. 140, § 157, are essentially adjudicatory in nature, we apply the substantial evidence test. See *Saxon Coffee Shop, Inc.* v. *Boston Lic. Bd.*, 380 Mass. 919, 924-925 (1980). We reject both the Durbins' contention that the decision appealed from had to be supported by "clear and convincing evidence" (a proposition for which they provide no authority) and the board's assertions that the decision must stand unless it is shown to be "arbitrary and capricious." Contrast *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 217 & n.2 (1989) (decisions to grant exemptions from curriculum regulations were entirely within the board's administrative discretion, and certiorari review was therefore limited to a determination whether the board acted arbitrarily and capriciously). "In order to be supported by substantial evidence, [a] . . . conclusion need not be based upon the 'clear weight' of the evidence . . . or even a preponderance of the evidence, but rather

*nel Admn.*, 422 Mass. 459, 464 (1996), quoting from *Gloucester* v. *Civil Serv. Commn.*, 408 Mass. 292, 297 (1990) (reviewing court "need only inquire whether the . . . decision was 'legally tenable and supported by substantial evidence on the record as a whole' "); "substantial evidence" being "such evidence as a reasonable mind might accept as adequate to support a conclusion." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981).

Under the substantial evidence test, the reviewing court is not empowered to make a de novo determination of the facts, to make different judgments as to the credibility of witnesses, or to draw different inferences from the facts; it cannot disturb a choice made below between two fairly conflicting inferences or views of the facts, even if it might justifiably make a different choice were the case before it de novo. *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. 357, 369 (1987).

Thus, we are called upon to decide only whether the Superior Court judge correctly ruled that the record reflected no error of law by the District Court judge adversely affecting the Durbins' material rights, see *Carney* v. *Springfield*, 403 Mass. at 605, and whether the District Court's decision was supported by substantial evidence. See *Goldie's Salvage, Inc.* v. *Selectmen of Walpole*, 31 Mass. App. Ct. 726, 732 (1992).

*Denial of the Durbins' motion to present additional evidence.* The Durbins' principal claim, relying on our decision in *Cullinane* v. *Selectmen of Maynard*, 50 Mass. App. Ct. 851 (2001), is that the Superior Court judge erred in denying their motion for leave to present additional evidence.[8] Given the constrained review on a petition for certiorari, as properly applied by the

only upon 'reasonable evidence.' " *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 (1996), quoting from *Medical Malpractice Joint Underwriting Assn. of Mass.* v. *Commissioner of Ins.*, 395 Mass. 43, 54 (1985). It should be noted that, notwithstanding its focus on record evidence and fact finding, the fundamental question to be determined on substantial evidence review is itself a question of law. See Cella, Administrative Law and Practice § 1572 (1986).

[8]The Durbins sought to introduce the following evidence extrinsic to the record and postdating the proceedings in the District Court by up to one and one-half years: (1) an affidavit from Sandra Durbin regarding their November 30, 1999, purchase of a home located on a secluded piece of property in Plympton; their willingness and ability to construct an enclosure for the dogs

judge in her memorandum of decision and order, it is clear there is no merit to the Durbins' claim that they should have been granted leave — twenty months after the District Court judge's ruling following a multi-day trial de novo — to introduce evidence extraneous to the record and arising after the incident. See *Goldie's Salvage, Inc.* v. *Selectmen of Walpole*, 31 Mass. App. Ct. at 733-734.

Nor does *Cullinane* support their position. There, this court was asked to reverse a judgment of the Superior Court upholding earlier municipal and District Court orders for the humane destruction of a pair of dogs that had escaped their enclosure and killed and maimed a number of animals. While the case was pending on appeal, one of the dogs, Shadow, died of cancer. Although this new evidence was extrinsic to the certiorari record, we nonetheless viewed it, in the particular circumstances presented in the record, as justifying a remand for further consideration and granted the parties leave to present additional evidence. *Cullinane* v. *Selectmen of Maynard*, 50 Mass. App. Ct. at 854-855.

Our remand decision in *Cullinane* was, however, inextricably linked to the nature of the case as presented in the District Court, which had focused entirely on the dogs' aggressive behavior as a pair or team. It was their unity of action that

on this property; and their willingness to implement a wide variety of restrictive measures and any additional measures deemed necessary by the court to ensure that the dogs are not involved in another incident; (2) pictures and diagrams of their new home and surrounding properties; (3) a letter (unattested) from the board of selectmen in the town of Plympton stating that based on the members' knowledge of the Kingston incident involving the child and the opinions of several canine professionals in regular contact with Bear and Sampson, the board would have no objection to allowing the dogs to return home with the Durbins, so long as all necessary restrictive measures were taken; (4) an affidavit from Elaine D. Dustin, the owner and operator of Cam-Belles Country Inn kennel, stating that, based on her professional experience in the canine training and care field and her interactions with Bear and Sampson, she was of the opinion that the dogs were well adjusted, did not exhibit any behavior indicative of a vicious disposition, and did not pose any threat to the public; and (5) an affidavit from Lori M. Harvey, D.V.M., Bear and Sampson's veterinarian, stating that in her opinion neither dog exhibited aggressive behavior either at the Durbin home or at the kennel and that, if the dogs were allowed to return to the Durbins' new home, she would render veterinarian services to the dogs on location unless safety required that the care be administered at the veterinary clinic.

provided the sole basis on which the destruction order was issued. It was clear from the record that the triers of fact had considered the two dogs' vicious dispositions solely in the context of their joint behavior, even while concluding that Shadow was the dominant dog and the other, Misty, the follower dog. After Shadow's death, the "team" no longer existed, and the evidence failed to support a finding that Misty, acting alone, possessed a vicious disposition (indeed, the record could be read to indicate that Misty was not aggressive as an individual). *Cullinane* v. *Selectmen of Maynard*, 50 Mass. App. Ct. at 855.

Unlike the situation presented in *Cullinane*, the Durbins' proffered new evidence (see note 8, *supra*) failed to undermine the findings of the District Court judge. In addition to the obvious facts distinguishing this case from *Cullinane* — namely, that both dogs remain alive and able to function as a pair; that no evidence established which, if either of them, was the dominant dog; that all of the evidence of their aggressive behavior had involved both of them acting together (in *Cullinane*, there was some evidence of the dominant dog, Shadow, acting alone during the course of their joint forays); and that their aggression had been directed at people, not other animals — in *Cullinane*, all of the evidence pertaining to Misty related to and was based on her role as the follower dog of a predatory team and not on her behavior as an individual. Upon Shadow's death, an ultimate finding as to Misty's "vicious disposition" when acting alone would consequently have been unsupported by the record, which provided no evidentiary basis to justify an order for Misty's death. In the present case, even had the proffered new evidence been available and received by the District Court judge, substantial evidence in the record would still have supported a finding that the dogs were of vicious disposition and should be destroyed.

At the de novo District Court hearing the Durbins had in fact introduced evidence of measures they had taken (similar to those they proposed would be implemented at their new residence) to confine the dogs to their home on Copper Beach Drive, as well as the testimony of several canine experts (which the District Court judge explicitly stated he did not credit) that neither Bear nor Sampson was of a vicious disposition and that

one episode of biting (however horrific) should not condemn a dog as being vicious. Although the proposed new evidence would establish that the Durbins no longer lived as close to a school as they had in Kingston, that alone would not have undermined the findings of the District Court judge, because the location of the Durbins' Kingston home next to an elementary school, while mentioned as significant, was only one of several factors supporting the judge's conclusions and order. None of the new evidence removed all supportable bases for the disposal of Bear and Sampson in a manner analogous to that in *Cullinane.* We cannot, therefore, conclude that the essentially cumulative extrinsic evidence the Durbins sought to introduce before the Superior Court judge — contrary to certiorari practice and precedent — warranted following the unique proceedings adopted in *Cullinane.*

Rather than belatedly attempting to introduce new evidence before an essentially appellate tribunal constrained by the limited nature of certiorari review, the Durbins' more appropriate strategy, however unlikely of success, would have been to file a timely motion with the District Court judge for relief from judgment, on the basis of the alleged significant change in circumstances, pursuant to Mass.R.Civ.P. 60(b)(6), 365 Mass. 829 (1974), which provides for relief where there is "any other reason [than those not included in subparts (1)-(5) of the rule] justifying relief from the operation of the judgment."

"It is the function of rule 60(b)(6) 'to preserve the delicate balance between the sanctity of final judgments . . . and the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *Winthrop Corp.* v. *Lowenthal,* 29 Mass. App. Ct. 180, 188 (1990), quoting from *Freitas* v. *Freitas,* 26 Mass. App. Ct. 196, 198 (1988). Although relief under the rule is discretionary and will be granted only in "compelling or extraordinary circumstances," *Winthrop Corp.* v. *Lowenthal, supra* at 188, it is at least theoretically available when the movant demonstrates that such relief is "appropriate to accomplish justice" (which is what the Durbins repeatedly asserted would be achieved by introduction of their additional evidence). *Id.,* quoting from *Parrell* v. *Keenan,* 389 Mass. 809, 815 (1983). Further, the court has authority to take equitable considerations into account on such a motion. See *Currier* v.

*Malden Redev. Authy.,* 16 Mass. App. Ct. 906, 907 (1983). The Durbins failed, however, to avail themselves of this proper, if difficult, avenue of relief, and this court cannot expand the limited review afforded to cases heard on certiorari to compensate for their disadvantageous procedural decision.

*Alleged procedural errors.* The Durbins allege that the Superior Court judge failed to address three prejudicial procedural errors at the board level, namely, that (1) Mr. Erbe's "complaint" to the board only stated that one of the dogs was involved in the attack on Daniel and that it was "a shocking turn of events" when the board rendered its order that both Bear and Sampson be "humanely euthanized"; (2) the complainant (Mr. Erbe) never testified during the extensive course of these proceedings, even though G. L. c. 140, § 157, states that the investigation will include "an examination on oath of the complainant"; and (3) Attorney Wadland, the personal injury lawyer representing Daniel, was allowed to cross-examine witnesses at the de novo District Court hearing.

Even if the alleged procedural defects constituted error, the Durbins have failed to establish that their substantial rights were affected thereby in any way, much less injuriously. See G. L. c. 231, §§ 119, 132; Mass.R.Civ.P. 61, 365 Mass. 829 (1974). Their arguments, in any event, ignore the following facts. First, it was clear from the beginning of the proceedings before the board that the evidence introduced pertained to both dogs' vicious dispositions, so that it could not plausibly have been a "shocking turn of events" for the Durbins to realize that both dogs were the subject of the hearing and the resultant order.[9] Second, the Durbins do not appear to have made an issue at the board hearing of the absence of the complainant (whose nonpercipient testimony about the incident would have been hearsay and whose testimony about the two dogs' aggressive behavior would have been cumulative of that of other neighbors); could have subpoenaed him at any point in the

---

[9]The Durbins' counsel in fact took the position below that Mr. Erbe's complaint letter was inadmissible hearsay that could not be admitted for the truth of the matter asserted therein. The Durbins' counsel also acknowledged that Mrs. Erbe had testified before the board that both dogs were involved and had told the Kingston animal control officer the same prior to the board hearing, and that the officer had recommended to the board that both dogs be euthanized.

proceedings; and had a full opportunity to cross-examine Mrs. Erbe, who had been witness to Krystina's excited utterances just after the incident, as to the events surrounding the attack on her son. Third, the Durbins failed to object to Attorney Wadland's participation at the de novo hearing before the District Court judge, thereby waiving the issue, and no perceptible harm could have occurred as a result of his participation, because the Durbins' attorney conducted an unrestrained recross-examination of the witnesses questioned by Wadland.

*Remaining alleged errors of law.* We have considered the remaining issues raised on appeal in light of the proper standard of review and determine that they have no merit, substantially for the reasons set forth in the Superior Court judge's memorandum of decision and order, as amplified by the board in its brief. We need make only the following observations as to such issues.

(1) Notwithstanding the dictum in *Cullinane* v. *Selectmen of Maynard*, 50 Mass. App. Ct. at 854, stating that "the order for disposal of the [dogs] . . . was subject to the possible criticism that it was reached without sufficient consideration of the several forms of the alternative of 'restraint,' " our decision in that case, based on its unique set of facts, did not announce a general principle that an order to dispose of a dog whose vicious disposition has been established by the evidence cannot stand unless it is clearly demonstrated that no less severe alternative exists. See *id.* at 854-855. Moreover, the District Court judge in fact received and considered evidence at the de novo hearing relating to the alternative measures that had been, were being, and could in the future be taken by the Durbins to restrain Bear and Sampson or lessen their risk to others, but found them insufficient to protect the public's safety, in particular finding the Durbins' expert witnesses' testimony in this regard "unconvincing" — a credibility determination to which we must defer.

(2) It was well within the District Court judge's broad discretion to admit the testimony of Mrs. Erbe regarding statements made by Krystina (who did not testify) immediately after the attack on Daniel under the excited utterance exception to the hearsay rule. See *Commonwealth* v. *Zagranski*, 408 Mass. 278,

285 (1990) ("an utterance is spontaneous if it is made under the influence of an exciting event and before the declarant has had time to contrive or fabricate the remark, and thus it has sufficient indicia of reliability"); *Commonwealth* v. *Whelton*, 428 Mass. 24, 26 (1998) (same).

(3) No harm was caused the Durbins as a result of the District Court judge's denial of "Requested Rulings of Law" Nos. 4, 11, and 12, because even if each dog subject to a hearing and order under G. L. c. 140, § 157, must specifically be proved a "nuisance" by reason of a "vicious disposition" (but see *Commonwealth* v. *Ferreri*, 30 Mass. App. Ct. 966, 968 [1991]), there was more than sufficient evidence in the record to warrant reasonable inferences supporting the finding that both dogs were involved in the attack on Daniel[10] and that both dogs had on a number of occasions combined to engage in menacing behavior toward others in the neighborhood as, indeed, the District Court judge "specifically" so found.

(4) The District Court judge properly denied "Requested Ruling of Law" No. 5, because neither the plain language of G. L. c. 140, § 157, nor any case authority supports the Durbins' proposition that a dog cannot be determined to be a nuisance where the behavior complained of occurred on the property of the owner and did not interfere with the rights of the community at large. Compare *Commonwealth* v. *Ferreri*, 30 Mass. App. Ct. at 966-968 (District Court judge properly ordered removal of the defendant's dogs where the behavior complained of was excessive and disruptive barking — conduct subject to sanctions under the statute — while on the defendant's own property).

(5) The District Court judge properly denied "Requested Ruling of Law" No. 6, as there is no authority for the Durbins' unduly restrictive interpretation of the statute that, in order for a dog to be deemed a nuisance by reason of vicious disposition, it must be proved that the dog was "accustomed to attack and

---

[10]Mrs. Erbe testified that Krystina excitedly had said that both dogs had attacked Daniel and that Sampson had grabbed and ripped Daniel's sweatshirt while Bear was mauling Daniel's face. Krystina's mother testified that she had told the Kingston animal control officer that Krystina had said both dogs were involved in the attack.

injure mankind'' and that the dog possessed ''a general propensity'' to be vicious to others. Even if the denial were erroneous, no harm ensued (as the Superior Court judge expressly determined) in light of the previously noted evidence that the two dogs had acted together in numerous acts of assaultive, menacing behavior that came perilously close to causing physical injury and frightened residents of and visitors to the neighborhood, both on and off the Durbins' property and in spite of measures they had taken to restrain the animals.

*Conclusion.* Although the Durbins offered evidence that might rationally have supported a finding that Bear and Sampson were not of ''vicious disposition,'' the District Court judge had discretion to reject this evidence[11] in light of the town's evidence demonstrating the contrary, which we conclude was sufficiently substantial to justify the disposal order. See note 7, *supra.* The town's evidence supported the judge's findings that both dogs had participated in the attack on Daniel; that the attack had in fact been a severe mauling resulting in numerous punctures, abrasions and bruising; that both dogs had exhibited aggressive behavior while on the Durbins' property toward individuals not on the property; that the dogs had previously escaped from the Durbins' yard and had threatened members of the community; and that on several occasions the Durbins were delinquent in taking steps to retrieve the dogs after they had run off the property. We also conclude that the District Court judge's order to destroy the dogs was not infected by error of law but was made in light of evidence he had received and considered addressing the issue of the feasibility of less severe alternatives to such disposal and upon his conclusion that no reasonable, viable alternatives consistent with public safety existed.

Accordingly, we affirm the decision of the Superior Court judge dismissing the Durbins' certiorari petition and upholding

---

[11]The Durbins' expert evidence, which the judge found ''unconvincing,'' established at most that the dogs were not aggressive when they were in the presence of the Durbins, regular visitors to their home, and dog trainers — all controlled situations that did not replicate the instances of the dogs' menacing (and in Daniel's case injurious) behavior to unfamiliar individuals and the public at large.

the District Court judge's order that the dogs, Bear and Samp-
son, be humanely put down.[12]

*Judgment affirmed.*

---

[12]We do agree with the Durbins that their appeal and arguments to this
court were not so egregiously frivolous as to merit the sanction of counsel
fees and double costs as requested by the board. See *Symmons* v. *O'Keeffe*,
419 Mass. 288, 303-304 (1995); *Allen* v. *Batchelder*, 17 Mass. App. Ct. 453,
458 (1984). Compare Mass.R.A.P. 26(a), 365 Mass. 873 (1974).