MacLeod-Mancuso, Bonnie H., J.

INTRODUCTION

This action for review arises out of a decision by the respondent, Mark McCabe, Director of Cambridge Animal Commission, to euthanize a dog owned by the petitioner, Mark Bonacci. The petitioner seeks review by certiorari of the respondent’s decision, along with rulings by an Assistant Clerk Magistrate and the District Court pursuant to G.L.c. 249, §4, and has filed a motion for summary judgment. The Court held a non-evidentiaiy hearing on June 19, 2006. For the following reasons, the petitioner’s Motion for Summary Judgment and Petition for Certiorari are DENIED.

BACKGROUND

The following facts are those which are relevant and established by the record below. The petitioner, Mark Bonacci (“Bonacci”), is the owner of a Stratfordshire terrier, commonly known as a pit bull, named Storm (“Storm”). On October 16, 2003, the Cambridge Animal Commission (“CAC”) ordered that Storm be muzzled and leashed whenever he was to be walked. This order resulted from an incident where Storm attacked and injured another dog, a Labrador retriever puppy, and its walker, David Cooperstein (“Cooperstein”). By his own admission, Bonacci did not comply with this order.
On January 30, 2004, Gail Caldwell (“Caldwell”) was walking her dog, Clementine, a 65 pound Samoyed, at Fresh Pond in Cambridge. During her walk, Clementine was attacked by Storm and Bonacci’s other dog, Lexy. Storm was neither muzzled nor leashed at the time. Although Bonacci attempted to restrain Lexy and Storm, the dogs continued to *430 attack Clementine. Ultimately, Clementine suffered injuries that required sutures, stitches, and surgery to repair. Caldwell filed a complaint under the pains and penalty of perjury and the Director of the Cambridge Animal Commission, Mark McCabe (“McCabe”), conducted an investigation. Pursuant to his authority under G.L.c. 140, §157, McCabe ordered that Storm be humanely euthanized. Bonacci was not notified of the investigation and did not learn of it until McCabe issued the euthanization order. Bonacci appealed McCabe’s decision to an Assistant Clerk Magistrate of the Cambridge District Court. The Clerk Magistrate affirmed the order to humanely euthanize Storm.
Bonacci next requested a de novo hearing before the Cambridge District Court. On June 14, 2004, a de novo hearing was conducted before Singleton, J. At the hearing, the judge heard sworn testimony and applied the rules of evidence. Both parties were permitted to call and cross-examine witnesses. McCabe presented three witnesses at the hearing. Bonacci presented five witnesses. On July 2, 2004, the District Court affirmed McCabe’s order to humanely euthanize Storm.
Bonacci has filed a motion for summary judgment and is seeking review of the prior decisions by certiorari pursuant to G.L.c. 249, §4, asserting that legal error occurred in each of the prior three proceedings. Specifically, Bonacci claims that (1) McCabe made his order without first conducting a hearing and based his decision on unreliable written hearsay; (2) the Assistant Clerk Magistrate violated Rule 5 of the Uniform Magistrate’s Rules; and (3) the District Court utilized an inappropriate standard of review, did not rely on substantial evidence, and improperly decided to euthanize Storm without a jury trial.

DISCUSSION

The function of a court in a civil action in the nature of certiorari is not to reverse or revise findings of fact, but to correct errors of law. Police Comm’r of Boston v. Robinson, 47 Mass.App.Ct. 767, 770 (1999). In an action in the nature of certiorari the reviewing judge is limited to correcting “substantial errors of law apparent on the record adversely affecting material rights.” MacHenry u. Civil Serv. Comm., 40 Mass.App.Ct. 632, 634 (1996), quoting Commissioners of Civil Serv. v. Municipal Ct. of Boston, 369 Mass. 84, 90, 337 N.E.2d 682 (1975), quoting from Sullivan v. Committee on Rules of the House of Representatives, 331 Mass. 135, 139, 117 N.E.2d 817 (1954). Certiorari review encompasses only those errors “which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.” Durbin v. Board of Selectmen, Kingston, 62 Mass.App.Ct. 1, 5 (2004), quoting Murray v. Second Dist Ct. of E. Middlesex, 389 Mass. 508, 511 (1983).
The standard of review varies according to the nature of the action for which review is sought. McSweeney v. Town Manager of Lexington, 379 Mass. 794, 800, 401 N.E.2d 113 (1980). Because proceedings under G.L.c. 140, §157 “are essentially adjudicatory in nature,” the Appeals Court of Massachusetts applies the substantial evidence test. Durbin, 62 Mass.App.Ct. at 6 n.7. Substantial evidence is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Durbin, 62 Mass.App.Ct. at 6, quoting New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466, 420 N.E.2d 298 (1981). “In order to be supported by substantial evidence, [a]... conclusion need not be based upon the ‘clear weight’ of the evidence ... or even a preponderance of the evidence, but rather only upon ‘reasonable evidence.’ ” Id. at 6 n.7, quoting Lisbon v. Contributory Retirement Appeal Bd., 41 Mass.App.Ct. 246, 257, 670 N.E.2d 392 (1996), quoting from Medical Malpractice Joint Underwriting Assn. of Mass. v. Commissioner of Ins., 395 Mass. 43, 54, 478 N.E.2d 936 (1985). Under the substantial evidence test, the reviewing court is not empowered to make a de novo decision, but is called upon only to decide whether the District Court’s decision was supported by substantial evidence. Id. at 9.
1. Decision of the Cambridge Animal Commission
Bonacci first claims that McCabe improperly ordered the humane euthanasia of Storm without the notice and hearing required by G.L.c. 140, §157, the Fourteenth Amendment to the United States Constitution, and the Massachusetts Declaration of Rights. McCabe asserts that he complied with the requirements of G.L.c. 140, §157, which does not require a director of an animal commission to give notice and conduct a hearing “concerning the restraint or disposal of such dog as maybe deemed necessary.” G.L.c. 140, §157. He also asserts that Bonacci was afforded due process under the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights.
Since G.L.c. 140, §157[1] does not require a hearing prior to forfeiture of a dog, the right claimed by Bonacci to a hearing prior to the deprivation of a property interest would have to arise from either the U.S. Constitution or the Massachusetts Declaration of Rights.[2] McCabe argues that this issue is essentially moot in view of Commonwealth v. Ferreri 30 Mass.App.Ct. 966 (1991). This Court, however, does not agree with this assertion. In Ferreri, the defendant claimed that the statute violates fundamental notions of due process. Id. at 967. In resolving this claim, the Appeals Court merely examined the actual process that was afforded the dog owner, and not whether the statute itself passed constitutional muster. Id. at 968 (finding that “(t]he procedural history of this case establishes that the defendant was afforded all the process due him”). Furthermore, the facts of Ferreri differ from the present situation in that the dog owner in Ferreri was provided notice and a hearing by the *431 Lunenberg Board of Selectman prior to their order to remove the dogs. Id. at 967.
The issue before this Court is whether a pre-deprivation hearing was necessary. “Generally, due process requires that an individual must receive notice and a hearing prior to governmental deprivation of property.” Leger v. Comm’r of Revenue, 421 Mass. 168, 172 (1995). That is not to say, however, that due process cannot be satisfied by adequate post-deprivation proceedings. See id. (“[A]s for the assessment and collection of taxes, it is well established that post-deprivation procedures may satisfy the demands of due process”). Post-deprivation proceedings may satisfy the demands of due process when the governmental deprivation of property is necessary to protect the public. See Ewing v. Casselberry, 339 U.S. 594, 599-600 (1950) (“One of the oldest examples is the summary destruction of property without prior notice or hearing for the protection of public health"). In addition, the United States Supreme Court has held that the issue of constitutional sufficiency of administrative procedures requires consideration of three factors: “(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probative value, if any, of additional procedural safeguards; (3) the Government’s interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.” Matthews v. Eldridge, 424 U.S. 319, 335 (1976).
Although a dog owner’s emotional attachment to a dog may well transcend the pet’s actual monetary value, there is a strong public interest in protecting society at large from the serious danger a vicious pet may pose. Further, this Court does not believe that “the risk of an erroneous deprivation” is high in light of the procedural safeguards of G.L.c. 140, §157, i.e. the right to an appeal before a clerk magistrate and the right to a trial de novo before the district court. See Boddie v. Connecticut, 401 U.S. 371, 378 (1971) (“What the Constitution does require is ‘an opportunity . . . granted at a meaningful time and in a meaningful manner,’ Armstrong v. Manzo, 380 U.S. 545, 552 (1965)’ (emphasis added), ‘for [a] hearing appropriate to the nature of the case,’ Mullane v. Central Hanover Tr. Co., [339 U.S. 306, 313 (1950)]”). Thus, where the well-being of the public is at stake, and adequate post-deprivation remedies exist, pre-deprivation notice with respect to summary destruction of property is not necessary to satisfy the demands of due process. See Ewing, 339 U.S. at 599-600.
Bonacci also argues that the lack of due process cannot be corrected by the right to a subsequent de novo trial because he was not entitled to an impartial adjudication in the first instance. He relies on Ward v. Village of Monroeville, in which the Supreme Court held that a biased decision-maker is not “constitutionally acceptable simply because the state eventually offers the defendant an impartial adjudication.” 409 U.S. 57, 62-63 (1972). McCabe refutes any assertion that he was biased by noting that Bonacci has provided no evidence thereof. G.L.c. 140, §157 requires that “the officer in charge of the animal commission . . . shall investigate or cause to be investigated such complaint, including an examination on oath of the complainant and may make such order concerning the restraint or disposal of such dog as may be deemed necessary.” G.L.c. 140, §157 (emphasis added). In this case, Caldwell filed a complaint with Cambridge Animal Control under the pains and penalty of perjury and McCabe investigated the complaint as required by G.L.c. 140, §157. Bonacci also fails to identify in the record any examples of McCabe’s alleged bias. Thus, even if the Court found that Bonacci’s right to due process was violated, the de novo hearing held by the District Court would have remedied that violation.
Bonacci’s second claim respecting the decision of the Cambridge Animal Commission is that, as there was no evidentiary hearing, McCabe’s decision was improperly based upon unreliable hearsay and thus was not grounded on substantial evidence as required under G.L.c. 249, §4. See Durbin, 62 Mass.App.Ct. at 8. McCabe asserts that he complied with the requirements of G.L.c. 140, §157 by investigating Caldwell’s complaint and interviewing Caldwell. Additionally, Caldwell filed a sworn complaint with the Cambridge Animal Commission, which she signed under the penalty of perjury under the laws of Massachusetts. Since McCabe’s decision was based, at least in part, on a sworn complaint, this Court finds that there is no merit to Bonacci’s assertion that McCabe’s decision was based on hearsay.
2. Decision of the Assistant Clerk Magistrate
Bonacci claims that the Assistant Clerk’s refusal to read the Memorandum of Law submitted to her amounted to a violation of Rule 5 of the Uniform Magistrate’s Rules. Bonacci argues that the Assistant Clerk’s decision to ignore the memorandum renders her decision arbitrary. McCabe asserts that Rule 5 does not contain such a requirement. See Rule 5 of the Unif. Magistrate Rules (2006).
The Court agrees with McCabe in that Rule 5 does not require clerk to consider legal memoranda.[3] Id. In fact, a clerk need only conduct a hearing and consider whether the previous order “was made without proper cause or in bad faith.” Id. Since the Assistant Clerk afforded Bonacci a hearing and listened to arguments from counsel, the Assistant Clerk fully complied with Rule 5 of the Unif. Magistrate Rules and no error was committed.
3. Decision of the District Court
Bonacci claims that the following errors were made by the District Court: (1) the District Court applied an incorrect standard of review during the de novo hearing; (2) the evidence considered did not support the *432 District Court’s ultimate finding; and (3) the District Court could not order the death or banishment of Storm without a jury verdict.
a.District Court Standard of Review
Bonacci argues that the District Court failed to make a de novo determination as provided by G.L.c. 140, §157. In his memorandum, Bonacci provides a lengthy explanation of the various standards of review available in Massachusetts. Bonacci contends that the district court judge applied the “second strictest” standard of review, “without proper cause or in bad faith,” where he should have applied the “seventh strictest” standard of review, “a de novo hearing."
In support of his argument, Bonacci points to the court’s ruling that “[G.L.c.] 140, § 157 provides that the standard of review is whether the Director’s order is ‘without proper cause or in bad faith.’ ” Bonacci also notes the judge’s ruling that “the Director issued the order for good cause and he did not make it in bad faith.” McCabe asserts that it was proper for the judge to apply the “without proper cause or in bad faith” standard because it is the only standard mentioned in the statute.
Although the Court may not necessarily agree with McCabe’s interpretation of G.L.c. 140, §157, it appears that the judge actually applied a standard of review that is consistent with a hearing de novo. See Black’s Law Dictionary 725 (7th ed. 1999) (defining hearing de novo as “[a] reviewing court’s decision of a matter anew, giving no deference to a lower court’s finding”). The judge heard sworn testimony and applied evidentiary rules. Furthermore, in his rulings, the judge stated, “[biased on the above findings of fact, this Court finds by clear and convincing evidence that Storm is a nuisance due to a vicious disposition, a threat to public safety and that Mr. Bonacci is unable to properly restrain Storm to prevent future attacks on animals or humans.” Since the judge heard the evidence anew and made a decision by clear and convincing evidence, it applied a standard of review consistent with Bonacci’s “seventh strictest” standard. Even if the judge misstated the proper standard of review, such a misstatement amounts to little more than technical error. See Whitney v. Judge of the Dist. Court of No. Berkshire, 271 Mass. 448, 459 (1930) (“[writ of certiorari] does not issue on account of formal or technical errors or those which have not resulted in manifest injustice”).
b.Lack of Substantial Evidence
“Under the substantial evidence test, [this] court is not empowered to make a de novo determination of the facts, to make different judgments as to the credibility of witnesses, or to draw different inferences from the facts; it cannot disturb a choice made below between two fairly conflicting inferences or views of the facts, even if it might justifiably make a different choice were the case before it de novo.” Medi-Cab of Mass. Bay, Inc. v. Rate Setting Comm’n., 401 Mass. 357, 369 (1987). In reviewing proceedings under G.L.c. 140, §157, a conclusion will be supported by substantial evidence where it is based on “reasonable evidence.” Durbin, 62 Mass.App.Ct. at 6 n.7.
Bonacci asserts that there was not substantial evidence to support the finding that Storm is a nuisance by vicious disposition. Bonacci also argues that there must be substantial evidence of the “dangerousness of the animal’s character” in order to determine vicious disposition. He relies on Place v. Board of Selectmen for the Town of Lakeville, No. 9460 CV 0487 (Wareham Division, District Court Department, January 19, 1995), quoting Cooper v. Cashman, 190 Mass. 75 (1905), along with other historical precedent, to argue that in order for Storm to be a nuisance by reason of vicious disposition, Storm must be “accustomed to attack and injure mankind” and he must have a general propensity to be vicious as to harm others.
McCabe argues that under recent precedent he is not required to prove that Storm has a propensity to be vicious in order to provide substantial evidence that Storm is a nuisance by reason of vicious disposition. See Durbin v. Board of Selectmen of Kingston, 62 Mass.App.Ct. at 12-13 (holding that “there is no authority for the Durbins’ unduly restrictive interpretation of the statute that, in order for a dog to be deemed a nuisance by reason of vicious disposition, it must be proved that the dog was ‘accustomed to attack and injure mankind’ and that the dog possessed a ‘general propensity’ to be vicious to others”). McCabe asserts that the testimony of the two percipient witnesses to Storm’s attacks constitutes substantial evidence of Storm’s vicious disposition.
Here, there is reasonable evidence to conclude that Storm possessed a vicious disposition. Storm attacked and harmed two different dogs, without provocation, on two different occasions. He also injured the owners of the dogs during both attacks. Furthermore, neither Bonacci nor his wife were able to restrain or control Storm during the incidents. Under contemporary standards, these two attacks are sufficient to prove that Storm possessed a vicious disposition.
Bonacci asks the Court to reconsider the testimony of Danyne Campbell and Dr. Amy Marder. Both witnesses essentially stated that Storm is stable, gentle, and friendly. This Court, however, does not have the authority to “disturb a choice made below between two fairly conflicting inferences or views of the facts, even if it might justifiably make a different choice were the case before it de novo.” Medi-Cab of Mass. Bay, Inc., 401 Mass. at 369.
c.Request for Jury Trial
Bonacci argues that the decision to humanely euthanize Storm requires a jury verdict because euthanizing Storm is not absolutely necessary. See Commonwealth v. United Food Corporation, 374 Mass. 765, 779 (1978) (holding that orders for destruction of *433 property shall only be made “as are appropriate and necessary to abate the nuisance”). Bonacci concedes that, based on Ferreri, the restraint or removal of a dog pursuant to G.L.c. 140, §157 does not necessarily require a jury trial. See Ferreri, 30 Mass.App.Ct. at 968. Bonacci, however, attempts to differentiate Ferreri from the present case by arguing that the Ferreri court found removal to be absolutely necessary. In this case, Bonacci argues that he can abate any nuisance. In particular, Bonacci states that he would never take Storm for a walk with Lexy because “[o]nly when paired with Lexy have problems arisen.”
The Court finds this argument unconvincing. In his findings of fact, the district court judge concluded that “Mr. Bonacci is unable to properly restrain Storm to prevent future attacks on animals or humans.” In this ruling, the court clearly specifies the reason that removal is necessary, i.e., Bonacci’s clear inability to prevent future attacks.

ORDER

It is therefore ORDERED that Bonacci’s Motion for Summary Judgment and Petition for Certiorari pursuant to G.L.c. 249, §4 be, and hereby are DENIED.

Section 157 provides in relevant part: “If any person shall make a complaint in writing to the selectmen of a town . . . that any dog owned or harbored within . . . their jurisdiction is a nuisance by reason of vicious disposition . . . such selectman . . . shall investigate or cause to be investigated such complaint, including an examination on oath of the complainant, and may make such order concerning the restraint or disposal of such dog as may be deemed necessary.”

The procedural requirements of art. 10 of the Massachusetts Declaration of Rights are substantially the same as those under the Fourteenth Amendment. School Comm. of Hatfield v. Board of Educ., 372 Mass. 513, 514, 515 & n.2 (1977).

Rule 5 of the Unif. Magistrate Rules states, in pertinent part: “. . . the magistrate shall review the action of the body or person having issued the order, shall hear any witnesses and shall affirm the order unless it shall appear that it was made without proper cause or in bad faith, in which case the order shall be reversed.”