Wilson, Paul D., J.
Plaintiffs own and reside in neighboring homes on Conestoga Road in Lexington. Between their lots runs a 40-foot strip of conservation land owned by the Town of Lexington and controlled by the Defendant Lexington Conservation Commission (the “Commission”).
On June 19, 2012, the Commission approved a land management proposal that contemplates a new access to the nearby Katahdin Woods Conservation Area. A new 600-foot trail would run from Conestoga Road along the conservation land between Plaintiffs’ homes, then behind the home of Plaintiffs Jacqueline and Steven Klein, and then into the woods. The management plan contemplated the construction of a new 16-foot footbridge to span a drainage culvert, and a new 32-foot footbridge over an existing soggy trail section.
Construction of the new trail would involve work in what all parties agree are protected resource areas under the Lexington Wetland Bylaw. Therefore, the Lexington Conservation Stewards, a group of volunteers who build and maintain trails on Town-owned property, filed with the Commission a Request for Determination of Applicability (“RDA”), asking the Commission to rule that the contemplated work was not subject to the Lexington Wetland Bylaw. On August 7, 2012, the Commission issued the requested negative determination of applicability, permitting the construction of the footpath to proceed, subject to certain conditions but with no further Commission proceedings required.
Plaintiffs then filed this lawsuit against the Commission, representing themselves. At an early hearing in this case, I ruled that their complaint would be treated as certiorari appeal of the Commission’s decision of August 7, 2012.[2] Following the usual practice for such appeals, the Commission filed the Administrative Record with the court, Plaintiffs moved for judgment on the pleadings, and the Commission opposed that motion. See Superior Court Standing Order 1-96. Before filing their motion for judgment on the pleadings, Plaintiff retained counsel.
I heard argument on Plaintiffs’ motion on October 16, 2013, and I have reviewed the Administrative Record and the parties’ filings. For the reasons described below, I will allow Plaintiffs’ motion for judgment on the pleadings.
Background
In late June or early July 2012, the Lexington Conservation Stewards submitted an RDA to the Commission. In the narrative portion of their application, the Stewards said that the project involved three components: a 600-foot new trail segment, a 16-foot footbridge, and a 32-foot footbridge. The new trail segment would be a single-track dirt path, and the two new footbridges were the only structures necessary for the project. See Administrative Record (“AR”), 44-52. I cannot tell from the RDA whether the two footbridges are within the 600 feet of new trail, or are on existing trails within the Katahdin Woods Conservation Area, but that fact is irrelevant to my decision.
On July 3, 2012, the Commission posted a notice of a July 24 hearing on the Stewards’ RDA The notice described the project as “a trail proposal for Katahdin Woods Conservation Area filed by the Lexington Conservation Stewards to install a trail and boardwalks within the 100 [foot] buffer zone ofbordering vegetated wetlands on Town-owned conservation land located behind Conestoga Road.” AR 36. Before this court, the Commission has conceded that a “small section of the path on the 40-foot wide tract of land on Conestoga Road, close to the Katahdin Woods Conservation Area would be within the 100-foot buffer zone of bordering vegetated wetlands.” Commission’s Opposition to Motion at 3 ¶10.
The Commission held two public hearing sessions, on July 24, 2012, and on August 7, 2012. At the conclusion of the August 7 session, the Commission unanimously voted to issue “a negative determination with conditions.” AR 57. The Commission then filled out and signed a Determination of Applicability form. That *514 form indicated that the “work described in the Request is subject to review and approval” by the Commission, “and is approved under this negative determination of applicability subject to attached conditions beginning on page 4-2 of 2.” Supplement to Administrative Record at page 4 of 5. The Determination of Applicability did not contain a “page 4-2 of 2.” It did, however, include pages labeled 4-1 and 4-2, which imposed six conditions, one of which, condition 4, imposed four sub-conditions, quoted in part below, “to protect the wetland resource areas.” Id. at pages 4-1 and 4-2.
Analysis
Plaintiffs mount three attacks on the Commission’s decision. First, they argue that the Commission committed legal error when it issued a negative Determination of Applicability, rather than requiring the Stewards to file a Notice of Intent and obtain a Commission permit, concerning a project that concededly involved work in a buffer zone of a bordering vegetated wetland. Second, Plaintiffs suggest that the Commission lacked substantial evidence to support its decision. Finally, Plaintiffs complain that the Commission wrongly refused to hear their comments at the second of the two sessions of its public hearing. I agree with Plaintiffs first point, so I do not reach their second and third arguments.
1.The Regulatory Scheme
The parties agree that the relevant law is section 130-2 of the Lexington Wetland Protection Bylaw.[3] Plaintiffs contend that the work proposed by the Stewards is governed by section 130-2(A), which governs Notices of Intent (“NOIs”). The Commission, on the other hand, acted under section 130-2(C), which governs RDAs.
NOIs and RDAs are two different forms of applications to the Commission, serving two different purposes.
If a party is not sure if a particular geographic area, or particular form of work, would be subject to the Lexington Wetland Bylaw, the party may file an RDA under section 130-2(C), which, as its name suggests, requests a determination of applicability from the Commission about whether the Wetlands Bylaw applies to the geographic area or the contemplated work. The Commission then determines whether the geographic area is a protected resource area under the Lexington Wetland Bylaw (such as a freshwater wetland, creek, lake, vernal pool, or several other protected resource areas named in section 130-2(A)), or whether the work would involve actions regulated by the Lexington Wetland Bylaw (such as removing, filling, dredging, building upon or altering such a protected resource area).
If the Commission determines that neither the geographic area nor the proposed work is regulated under the Lexington Wetland Bylaw, the Commission issues a negative determination of applicability. In that case, the proponent is free to do the work without further oversight by the Commission.
If, on the other hand, the Commission issues a positive determination of applicability, the proponent of the work must file a NOI with the Commission, again as its name suggests, notifying the Commission o/its intent to do the work, and requesting “a permit issued by the Conservation Commission.” Lexington Wetland Bylaw §130-2(A). An NOI proceeding leading to a Commission permit is required if the project proponent intends to “remove, fill, dredge, build upon or alter any bank, freshwater wetland, marsh, bog, wet meadow, swamp, creek, river, stream, pond, lake, vernal pool habitat, land under water bodies, land subject to flooding, or any land bordering thereon .. .” Id.
A parly is free to skip the RDA step and go directly to the Commission with an NOI if, for example, it is obvious that the work would alter a wetland or otherwise impact a resource area in a manner regulated by the Wetland Bylaw.
2.The Certiorari Standard
For nearly 35 years, courts have reviewed the decisions of municipal conservation commissions under the certiorari statute, M.G.L.c. 249, §4. Lovequlstv. Conservation Commission of Dennis, 379 Mass. 7 (1979). That statute allows a court to “correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal.” M.G.L.c. 249, §4. The court ultimately decides whether to “enter judgment quashing or affirming such proceedings or such other judgment as justice may require.” Id. The purpose of an action in the nature of certiorari is to correct substantial errors of law apparent on the record adversely affecting material rights. Durbin v. Board of Selectmen of Kingston, 62 Mass.App.Ct. 1, 4-6 (2004).
3.Application of the Law to the Commission’s Decision
Plaintiffs suggest that the Commission made a substantial error of law, which is apparent on the face of the record: the Commission applied the wrong subsection of the Lexington Wetland Bylaw §130-2, and permitted the Stewards to obtain the wrong type of approval from the Commission. Because the Stewards propose to do work that would alter a resource area protected by the Lexington wetland bylaw, according to Plaintiffs they were required to file an NOI and obtain a permit, rather than simply filing an RDA and obtaining a negative determination of applicability. Furthermore, the Commission could not issue a negative determination for this project under the terms of the Lexington Wetland Bylaw, or so say Plaintiffs.
In their RDA, the Stewards said that the longer footbridge would be built on an existing, soggy trail section. Thus, it appears that the Stewards propose to “build upon or alter any.. . freshwater wetland, marsh, bog, wet meadow . . .” Bylaw §130-2(A). The longer footbridge, at the veiy least, likely requires an NOI.
Indeed, in its notice of the public hearing, the Commission stated that the Stewards’ proposal was to install a trail and boardwalks (that is, the two bridges) *515 within the 100-foot buffer zone of wetlands. The Commission concedes in its Opposition that at least a portion of the proposed path would be within the 100-foot buffer zone of bordering vegetated wetlands. The Lexington Wetland Bylaw requires an NOI for work that would “build upon or alter any... land bordering” one of the resource areas mentioned in section 130-2(A), which include a “freshwater wetland.” Thus the Commission has conceded that the Stewards plan the sort of work that requires the filing of an NOI and the issuance of a permit by the Commission.
Despite the plain language of the Lexington Wetland Bylaw, the Commission takes the position that an RDA was sufficient. Wetlands values will be protected, says the Commission, because it attached conditions to its negative determination of applicability limiting the manner in which the Stewards can perform the work.
However, the Lexington Wetland Bylaw does not allow the Commission to issue such a document. Section 130-2{C), under which the Commission acted, states that when a party files an RDA, “the Conservation Commission shall within 21 days make a written determination as to whether this by-law is applicable to any land or work thereon.” This provision does not allow for the imposition of conditions on a negative determination of applicability.
In fact, such conditions are inconsistent with the very nature of a negative determination of applicability. If the Lexington Wetland Bylaw is not applicable to a project, then the Commission lacks the authority to impose any conditions on that project. Therefore, the Commission issued an internally inconsistent document when it said, in what it labeled a “negative determination of applicability,” Determination of Applicability, Supplement to Administrative Record, at page 4 of 5, that the “area and/or work described in the Request is subject to review and approval.” Id.
The Commission only emphasizes the internally inconsistent nature of its decision in its Opposition: “Once the Commission has considered the project, and issued a Negative Determination of Applicability, all of the other requirements are eliminated and the project may proceed.” Commission’s Opposition to Motion at 9. Here the Commission correctly states the law, but ignores what it actually did. The Commission did not allow the project to proceed without any other requirements, instead requiring, for instance, that the work be done “using manual labor and tools,” that all disturbed upland areas “shall be permanently stabilized within 30 days after disturbance by loam and seeding or other measures acceptable to the Commission . . . The loam and seeding shall be held in place with jute netting . . .” Negative Determination of Applicability Condition 4, Supplement to Administrative Record at pages 4-1 and 4-2.
In fact, the conditions imposed by the Commission closely resemble conditions routinely imposed by conservation commissions in permits that they issue at the conclusion of NOI proceedings. That is not surprising, because the Commission’s power under this bylaw to impose conditions on a project springs only from section 130-2(A), which requires a project proponent to file an NOI and then “receive! ] and comply!) with a permit issued by the Conservation Commission.”
It is true that the courts are not to “interfere with the commission’s reasonable interpretation of its own bylaw.” Healer v. Conservation Commission of Falmouth, 63 Mass.App.Ct. 1117 (2005). However, here the Commission has not made a “reasonable interpretation of its own bylaw,” because the language of that bylaw simply does not give the Commission the authority to impose conditions on a project to which, the Commission has determined, the bylaw does not apply. Furthermore, the Commission stated in its public hearing notice that some of the work would be carried out within the buffer zone of bordering vegetated wetlands. The Lexington Wetland Bylaw requires the Commission to hold a full NOI proceeding for any project which will “build upon or alter any . . . freshwater wetland ... or any land bordering thereon.” Lexington Wetland Bylaw §130-2(A). No “reasonable interpretation” of the Lexington Wetland Bylaw would allow this work to be done without an NOI hearing, followed by a permit issued by the Commission.
I conclude that there has been an error in the proceedings of the Conservation Commission within the meaning of the certiorari statute. That error is apparent on the record, and adversely affects material rights of the Plaintiffs. Therefore, under the certiorari statute I will enter judgment quashing those proceedings.
Conclusion and Order
The Stewards’ proposal appears to be consistent with the already adopted management plan for the Katahdin Woods Conservation Area. The particular project at issue here, the construction of the footpath and the two footbridges, may well be meritorious, and the Commission could be correct in thinking that it could impose conditions on the project that would safeguard the wetlands values protected by the Lexington Wetland Bylaw. However, as currently designed the project requires that the Stewards file an NOI, not merely an RDA, and to obtain a permit under section 130-2(A). This the Stewards have so far failed to do.
Plaintiffs’ Motion for Judgment on the Pleadings is ALLOWED.

N'he Commission issued its decision under both the Lexington Wetland Bylaw and the state Wetlands Protection Act, M.G.L.c. 131, §40. The state portion of the Commission’s decision is not before me, as an appeal of that aspect of the decision must be taken to the Massachusetts Department of Environmental Protection. Plaintiffs apparently failed to take such an appeal in a timely fashion.

Nhis Bylaw is Exhibit C to the Commission’s opposition to Plaintiffs’ Motion for Judgment on the Pleadings.